HORACE SIBERELL, Administrator De Bonis' Non of Estate of HENRY WILLIAMS, v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, Appellant.—9 S. W. (2d) 912.

Division One, July 30, 1928.

918

*E. T. Miller, A. P. Stewart* and *C. H. Skinker, Jr.*, for appellant.

*Charles P. Noell* for respondent; *Glen Mohler*, of counsel.

922

ATWOOD, P. J.—This is an appeal from a judgment against the St. Louis-San Francisco Railway Company and in favor of Fannie Williams, administratrix of the estate of Henry Williams, deceased, for fifteen thousand dollars on account of the death of said deceased, alleged to have resulted from negligence of said railway company. The deceased was an engineer on said railway company's passenger train number 876, northbound from Hoxie, Arkansas, to Cape Girardeau, Missouri, and was killed when the engine was derailed and

overturned at a switch about 350 feet south of defendant's railway station at Advance, Missouri. The deceased left surviving him his widow, who commenced this action as the above-named administratrix, and three minor children. After judgment was rendered herein and while this appeal was pending said administratrix died, her death was suggested to this court, and Horace Siberell, administrator *de bonis non* of the estate of Henry Williams, deceased, was substituted as party respondent.

The suit was brought under the Federal Employers' Liability Act for the benefit of the widow and the three minor children. It was plaintiff's contention and the evidence tended to show that the engine driven by deceased was derailed and overturned by the lodgment in the frog of said switch of a part of a dragging brake beam or brake rod which had dropped down and was finally torn from the brake rigging of car numbered 32805 in defendant's northbound freight train numbered 848 which a few hours previous had passed over this track. Plaintiff went to the jury on three assignments of negligence, to-wit: first, that the brake beam or brake rod was dragging, and that the crew of the freight train in the exercise of ordinary care could have discovered it in time to have remedied it; second, that the train crew violated a rule of the railway company then in force which required trainmen to "know that the cars in their train are in good order before starting, and inspect them whenever they have an opportunity to do so;" and third, that the brake beam or brake rod was dragging between Brownwood and Advance, and that defendant and its agents and servants knew of this fact and could have prevented it from catching and becoming fastened in the frog. Defendant's answer was a general denial. At the close of plaintiff's case defendant interposed a demurrer to the evidence, which was overruled. At the close of the whole case defendant requested a peremptory instruction, which was refused.

Appellant first contends that its demurrer to the evidence should have been sustained and the peremptory instruction given. It is said that "under the Federal Employers' Liability Act negligence is an affirmative fact which plaintiff must establish;" that "the fact that the brake rod found wedged in the frog came from a car in the freight train rests wholly on conjecture and speculation;" and that "there was no substantial evidence of negligence on defendant's part proximately resulting in the death of the deceased."

We do not agree that the fact that the brake rod found wedged in the frog came from a car in defendant's freight train rests wholly on conjecture and speculation. Three witnesses, one of them being defendant's station agent at Brownwood, testified that as this freight

train, numbered 848, containing this car, numbered 32805, passed defendant's station at Brownwood which was about three miles south of Advance, they heard a noise beneath a freight car near the rear of the train such as a dragging brake beam or brake rod would make, and some of them saw an object beneath the car from which the noise came which looked like a dragging brake beam or brake rod. As the train approached Advance it consisted of an engine, tender, caboose, and about twenty-nine freight cars, these cars averaging forty feet in length. The train stopped with the engine headed north about two thousand feet south of the depot at Advance. The location of the frog of the switch in which a part of a brake beam or brake rod was found lodged immediately after the wreck a few hours later was variously estimated at one hundred feet to three hundred fifty feet south of this depot. The conductor of this freight train testified that car numbered 32805 was the seventh car from the rear of the train, so it is apparent that when this train started to leave Advance the car in question had not yet passed over this switch. This conductor further testified that as his train pulled out of Advance he stood twenty-five or thirty feet south of the depot and inspected every car, including the car in question, as the train passed, and that no brake beam or brake rod was dragging from any car. The evidence thus shows that a brake beam or brake rod was dragging from a car located about where freight car numbered 32805 was located in this train and that immediately after this car passed over the frog and switch in question no brake beam or brake rod was dragging therefrom. Car numbered 32805 was set out at Nash, about nineteen miles north of Advance, and the evidence further discloses that at that time it had no dragging brake beam or brake rod. The next day defendant sent its car inspector to Nash to inspect this car, and he testified that a brake beam or brake rod and other parts of the brake rigging had been newly broken from the car and were missing. The equipment that was missing generally corresponded with the broken portion found lodged in the frog of the switch and other parts attached thereto or found on the ground near by. After the wreck marks were discovered on the ties from Brownwood nearly to the scene of the wreck, such as a dragging brake beam or brake rod would make. We think the record presents substantial evidence, amply sufficient to go to the jury, from which the jury might well have concluded without guess or conjecture that the part found lodged in the frog of the switch was a part of a brake beam or brake rod that was dragging from car numbered 32805 when it left Brownwood.

We also think that the record presents substantial evidence proper to go to the jury tending to show that negligence of defendant was

the proximate cause of deceased's death. As above stated, plaintiff pleaded the existence of a rule of the railway company which required the trainmen to "know that the cars in their train are in good order before starting, and inspect them whenever they have opportunity to do so." This rule was admitted in evidence and shown to be then in force. The train was stopped at a water tank about one-half mile south of Brownwood. One of the train crew testified that it was there inspected and no dragging brake beam or brake rod was reported. The train was next stopped at Brownwood for about ten minutes, but during that time it was not inspected, although if any one of the crew had even stood at the station and caught the caboose after the other cars had passed by him he would certainly have noticed what was seen and heard by other witnesses at the station, namely, an object like a brake beam or brake rod dragging from a freight car near the rear of the train. Instead of doing this, however, the entire crew rode out of Brownwood on the engine or no farther back than the middle of the train. Furthermore, defendant's own evidence showed that its station agent at Brownwood called by telephone for its station at Advance, got what purported to be this station, and told the person speaking to have the conductor on train number 848 to look over his train; that he thought he had something dragging. It is true the agent testified that he was off duty when this occurred, that the connection was poor and he did not recognize the voice speaking as that of defendant's agent or helper at Advance, but he also testified that "it is any employee's duty to look out for danger, in case of danger, if they considered that to be dangerous, any employee's duty to notify them;" and that he could have telegraphed this information and request to defendant's agent at Advance. It further appears that a few hours later, before the wreck occurred and while this same agent was on duty, he conversed for some time with the conductor of deceased's northbound train while it was stopped at Brownwood, but did not tell him of the dragging brake beam or brake rod or of his telephone call to defendant's station at Advance. There was substantial evidence that defendant's negligence proximately caused this engineer's death, and defendant's demurrer and peremptory instruction were properly ruled.

Counsel for appellant urge that it was prejudicial error to admit the testimony of plaintiff's witness Kelch as to the telephone conversation Penrod, defendant's station agent at Brownwood, had respecting a dragging brake beam. and to overrule the motion to strike out that testimony. Mr. Penrod's deposition, taken by plaintiff, was substantially the same as the testimony given by witness Kelch with reference to this telephone conversation. Mr. Penrod was also called as a witness for defendant and on his direct examination testified fully as

to this telephone conversation and the matters previously objected to by counsel for defendant. Furthermore, notwithstanding the fact that defendant's station agent and helper at Advance, called as witnesses by defendant, said that they did not participate in and had no knowledge of any such telephone conversation with Mr. Penrod, the jury were the sole judges of their credibility. Witness Penrod testified that he called for the Frisco station at Advance through the regular telephone exchange connecting the towns of Brownwood and Advance, that when connection was made the voice that answered said it was the Frisco station at Advance, and when he finished his telephone message the voice at the other end of the line said the freight conductor would be notified. The facts connected with this telephone conversation are easily distinguishable from those presented in Strack v. Tel. Co., 216 Mo. l. c. 614, cited by appellant. It was not prejudicial error either to admit the testimony of witness Kelch or to refuse to strike it out.

At the trial defendant excepted to the action of the court in modifying and giving plaintiff's requested instruction numbered one consisting of four pages. Appellant here urges that this instruction "is so lengthy, involved and incomprehensible" that its effect was to confuse and mislead the jury. As to its length, we observe that it is the only instruction given at the instance of plaintiff and it undertakes to present plaintiff's theory of the entire case. Had the same elements been presented in several instructions they, in the aggregate, would probably have been as long. Defendant's theory of the case is presented in eight requested instructions which were given. They cover more than four printed pages of the abstract, and appellant now claims that the trial court should have given eleven more of its requested instructions covering nearly nine additional pages of the printed abstract. Single instructions of great length and a multiplicity of instructions are both frequently condemned, and in the light of its own record defendant's criticism appears without the grace of consistency. However, whether the giving of a single long instruction or a very large number of short ones constitutes prejudicial error depends upon whether or not the instructions given are confusingly repetitious, vague or conflicting. If the thought and expression of a comparatively long instruction be logical, clear and necessary to a proper direction of the case we do not understand why its substance would not be as easily understood and remembered by the jury as the substance of a number of separate instructions which cover the same ground and in the aggregate are as long. We have carefully examined the instruction here given and do not regard it as confusingly

involved, or incomprehensible, or to be condemned merely because of its length.

Appellant also says instruction numbered one "is conflicting in its own terms and self-destructive, authorizing a finding of two inconsistent and incompatible acts as the proximate cause of the death of deceased, (1) the brake beam or brake rod catching in the frog, and (2) the failure of the train crew in charge of the freight train to inspect the train at Brownwood and Advance, in violation of a rule of defendant requiring that trainmen must know that the cars in their train are in good order before starting, and inspect them whenever they have an opportunity to do so." We find no such inconsistency or incompatibility. Had the train been so inspected the dragging brake beam or brake rod would doubtless have been discovered and its lodgment in the switch frog could have been prevented.

Appellant further says that this instruction is not supported by the evidence in that there was no evidence of failure to inspect the freight train when it stopped at Brownwood and at Advance. Our above analysis of the evidence in this respect clearly indicates that it was sufficient to go to the jury. An inspection was said to have been made at the water tank stop south of Brownwood, but none during the stop at Brownwood. The only inspection made at Advance was not when the train stopped there, but while the train was passing the depot as it pulled out of Advance. It seems too plain for repetition that if even the moving train had been inspected as it pulled out of Brownwood the dragging equipment would have been discovered, or if an inspection had been made while the train was stopped at Advance it would have been discovered in time to have prevented this wreck. When the train stopped at the latter station the rear cars were far south of the switch where the wreck subsequently occurred, and if the brake beam or brake rod was still dragging when the freight train started north to pull out of Advance the only inspection that was said to have been made being made from the depot platform was of course ineffectual because the dragging equipment was torn from the car and lodged in the frog of the switch south of the depot before that part of the train passed by the platform where the conductor said he was standing when he inspected the moving train.

This instruction, among other things, told the jury that they should take into consideration only the pecuniary loss sustained by

928

the widow and minor children by reason of the death of Henry Williams "and in determining such loss, if any, the jury should base its findings on the present cash value of the support, if any, lost to them by reason of the death of Henry Williams, if you find that he did so die causing such loss, and the jury may in determining such matter take into consideration the age of Henry Williams at the time of his death, if you so find, his probable duration of life and his earning capacity," etc. The record does not show that any mortality tables were introduced in evidence, and on such account appellant says that this part of the instruction is not supported by the evidence, and that the instruction fails to give proper effect to the standard prescribed by the Federal Employers' Liability Act for determining the amount of damages, as interpreted by the Supreme Court of the United States, citing Gulf, Colorado & Santa Fe Ry. Co. v. Moser, Admx., 48 Sup. Ct. Rep. No. 4, p. 49, and other cases. The evidence showed that the deceased was forty-nine years of age, in good health, and earning an average of two hundred forty-two dollars a month at the time he was killed. The widow was thirty-three years of age, and the minor children were fourteen, sixteen and eighteen years of age, respectively. Appellant cites no authority holding that such a showing is insufficient to support an instruction like the above, or that in such a case failure of the plaintiff to introduce a mortality table in evidence is reversible error. As a matter of fact, the amount of the verdict returned is far less than the jury might have found by a strict application of mortality and present-worth-of-annuity tables, so it is apparent that the jury used no improper standard and defendant was not hurt if such tables were not used. In the cases cited by appellant (Gulf, C. & S. F. Ry. Co. v. Moser, 48 Sup. Ct. Rep. No. 4, p. 49; Chesapeake & Ohio Railroad Co. v. Kelly, Admx., 241 U. S. 485, 491; Chesapeake & Ohio Railroad Co. v. Gainey, Admr., 241 U. S. 494), the rule is thus stated:

**Mortality and Annuity Tables.**

"In computing the damages recoverable for the deprivation of future benefits, the principle of limiting the recovery to compensation requires that adequate allowance be made, according to circumstances, for the earning power of money; in short, that when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only."

The above rule was not violated in the instant case and there was substantial evidence to support the instruction given. [Gill v. Baltimore & Ohio Railroad Co., 302 Mo. 317.]

Appellant also assigns error in the court's refusal to give defendant's withdrawal Instructions III, IV, V, VIII, IX and XI. Some of these instructions asked the court to hold that there was no evi-

dence in support of certain alleged facts as to which we have already held there was sufficient evidence to go to the jury. The others related to original assignments of negligence which were abandoned by plaintiff during the trial or on submission of the case. The first class of instructions was, of course, properly refused. As to the second class, the trial court's refusal to give the requested withdrawal instructions did not harm defendant. [Johnson v. Railroad, 259 Mo. 534, l. c. 551; Dietzman v. St. Louis Screw Co., 254 S. W. (Mo. Sup.) 59, l. c. 65.]

Appellant complains of the court's refusal to instruct the jury that if they found that defendant's employees in charge of the train "could not, by the exercise of ordinary care on their part, have discovered the fact that said brake beam was dragging, then, independent of any other issue in the case, plaintiff cannot recover." The evidence shows that employees other than those in charge of the freight train were likewise charged with the duty to act whenever danger was apparent. This instruction was properly refused.

Also, defendant's requested "accident" Instruction XVIII, and instructions numbered XIX, XX and XXI to the effect that notice to agent Penrod of the dragging brake beam or brake rod when he was off duty was not notice to defendant, were all properly refused. The case made did not call for an "accident" instruction. As we said in Dietzman v. St. Louis Screw Company, 254 S. W. l. c. 65, this is "a case of negligence or no negligence as to defendant." We have already alluded to the fact that the evidence disclosed that whenever anything that an employee, whether on duty or not, deemed dangerous came to his notice it was his duty to report the condition to the proper authorities. Agent Penrod evidently understood this and acted accordingly. Whether or not he or other of defendant's employees were negligent after he learned of the dragging brake beam or brake rod was a question for the jury's determination under proper instructions.

Finally, appellant says that plaintiff Fannie Williams, the widow of deceased, having died after verdict and judgment and before the determination of this appeal, the action abates as to her, and since we have before us an unapportioned verdict a substantial part of which represents the pecuniary loss of the widow and not the children, the judgment should be reversed and the case remanded for a new trial in order that proper compensation for the minors may be determined by a jury. Sanders' Admx. v. Louisville & N. Railroad Co., 111 Fed. l. c. 711; Martin v. Railroad, 151 U. S. l. c. 692; Mich. Cent. Railroad Co. v. Vreeland, 227 U. S. 59, 68, 70; and C. B. & Q. Railroad Co. v. Wells-Dickey Trust Co., Special Admr., 48 Sup. Ct. Rep. No. 4, p. 73, are cited

in support of this view. Respondent, on the other hand, contends that judgment below having been rendered during the lifetime of the widow in favor of certain beneficiaries, of which she was one, her interest therein vested in her at once, and when she thereafter died her interest in the judgment passed to and is now vested in her personal representative.

It may be conceded that the question as to whether a particular cause of action, dependent upon a statute, survives the death of the plaintiff, or of the beneficiary for whose benefit the action is brought, is a question of right, and not of procedure, depending upon the substance of the cause of action, and its solution must be sought in the statute giving the right of action, which in this instance is the Federal Employers' Liability Act. [Martin v. Railroad, 151 U. S. 1. c. 692; Schreiber v. Sharpless, 110 U. S. 1. c. 80.] It has also been decided that prior to the amendment of the Employers' Liability Act in 1910 no right of action thereunder survived the death of the injured employee (Mich. Cent. Railroad v. Vreeland, 227 U. S. 1. c. 67) ; and that since this amendment and as the law now stands the right of action survives to the personal representative of the deceased "as trustee for the person or persons on whose behalf the act authorizes recovery," but that the cause of action accrues at the death of the employee and the vesting thereof is immediate, final and absolute with no shifting among the beneficiaries. [Chicago B. & Q. Railroad Co. v. Wells-Dickey Trust Co., 48 Sup. Ct. Rep., No. 4, p. 73.] But these decisions at most only go to the question of whether or not a right of action survives the death of the person for whose benefit it was created when the death of such person occurs before any judgment is rendered in his favor. Such even is the effect of the holding in Sanders' Admx. v. Louisville & N. Railroad Co., 111 Fed. 1. c. 711, above cited by appellant. There the right of action involved arose under a Tennessee statute, and the person in whose favor the right of action was created died after the action was commenced and before any judgment whatever was rendered. Defendant thereupon filed a plea to abate the action on that account. Plaintiff's demurrer thereto being overruled and plaintiff refusing to plead further, defendant's plea in abatement was held good and plaintiff's petition dismissed. On appeal to the United States Circuit Court of Appeals this judgment was affirmed on authority of Railroad v. Bean, 94 Tenn. 388. An examination of the opinion in the Bean case discloses that the action was commenced by George Bean, administrator of Frank Murray, deceased, "to recover damages for the negligent killing of plaintiff's intestate." The widow, for whose benefit the action was instituted, died after a judgment was rendered for defendant and plaintiff had appealed therefrom. The plaintiff, there-

fore, never at any time had a judgment favorable to the person for whose benefit the right of action was by statute created, and no question of the vesting of a judgment favorable to a living beneficiary who thereafter died was in this case. Nor is such a question in any of the other cases cited by appellant, although, as suggested by respondent, on the record in the instant case, this question is vital and controlling. Hence, we conclude that the authorities cited and suggestions made by appellant in support of its motion to abate this suit *pro tanto* are not in point. Furthermore, in the instant case a final judgment was rendered for plaintiff as trustee for four living beneficiaries. The verdict was not defective because it was unapportioned, the apportionment having been held to be a proper matter for probate courts. [Central Vermont Ry. v. White, 238 U. S. l. c. 515; Kansas City Southern Ry. v. Leslie, 238 U. S. l. c. 603.] The right of action conferred by the statute upon certain individuals was merged in the final judgment and the interest of these individuals therein immediately vested subject to the laws governing the devolution of like property in case of death, and the doctrine of abatement would not apply. The rule applicable under the record presented in this case is thus stated in 1 Ruling Case Law, page 39:

"It is as obvious as it is elementary that a final judgment is the end of litigation. That which up to the moment of the entry of a judgment for the relief sought was a matter in controversy becomes an absolute debt of one party to the other. The cause of action then has ceased to exist, being merged in the judgment, and consequently, so long as the judgment remains in force, the doctrine of abatement has no further application, unless the case is one in which the death wholly eliminates the matter in controversy, such as a suit for divorce, which will abate on the death of either party so far as it relates to the status of the parties, except where property rights dependent thereon are involved, or a bastardy proceeding, which will abate on the death of the defendant."

Of course the devolution of a judgment or any interest therein will not interfere with the unsuccessful party's right of appeal, and parties who have by any means acquired an interest therein may be adversely affected by the result of the appeal, but until the judgment is reversed or vacated it stands. We have frequently held that the death of one of several plaintiffs in error or one of several defendants in error neither abates a suit nor necessitates its revival in this court. [Prior v. Kiso, 96 Mo. l. c. 316; Maguire v. Moore, 108 Mo. l. c. 277; Essex v. Bushakra, 304 Mo. l. c. 237.] Appellant's motion to abate the suit *pro tanto* is denied.

For the reasons hereinabove stated the judgment of the trial court is affirmed. All concur.