THEODORE BOPP, JR., RESPONDENT, v. STANDARD SANITARY MANUFACTURING COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed November 8, 1927.

*Corpus Juris-Cyc. References:'Appeal and Error, 3CJ, p. 855, n. 34; 4CJ, p. 919, n. 43; Motor Vehicles, 42CJ, p. 1268, n. 17; p. 1275, n. 98; p. 1282, n. 8; Negligence, 29Cyc, p. 497, n. 74.

*A. E. L. Gardner* for appellant.

*George F. Heege* and *Julian C. Hoester, Jr.* for respondent.

SUTTON, C.—This is an action to recover damages for injuries suffered by plaintiff as the result of being struck by defendant's two-ton automobile truck. The accident happened on November 3, 1925, in the vicinity of the intersection of Lockwood avenue and Jackson road, public streets in the city of Webster Groves, Missouri. Lockwood avenue runs east and west. Jackson road runs north and south, and comes into Lockwood avenue from the south, where it stops. The east and westbound tracks of the United Railways Company are laid along the south side of Lockwood avenue in such manner as to permit vehicular traffic on the north side of the street, that is, north of the street car tracks. Westbound street cars run on the north track, and eastbound cars on the south track. The portion of Lockwood avenue devoted to vehicular traffic is made of tarvia, and is from eighteen to twenty-five feet wide. There is no curb or sidewalk on the north side of Lockwood avenue. A vacant lot adjoins Lockwood avenue on the north.

According to plaintiff's evidence, on the day of the accident, plaintiff, who was a carpenter foreman and superintendent at the time, left the scene of his work in the vicinity of Lockwood avenue, and proceeded to the intersection of Jackson road, where the street cars customarily stop to take on and discharge passengers. Plaintiff then stood for a while on the north side of Lockwood Avenue waiting to take passage on a westbound street car. As the street car approached the intersection he proceeded south across Lockwood avenue to a point four or five feet north of the westbound street car track. The approaching street car was then about twenty-five feet east of Jackson road, and the defendant's truck approaching from the west was a distance of about seventy-five feet away. Plaintiff arrived at the regular place where passengers intending to board westbound street cars stand, four or five feet from the westbound track, and waited for the approaching street car. The street car was slowing down to receive him as a passenger, and when it was from eight to ten feet away from him and had come almost to a stop, he looked west and saw defendant's truck approaching at a speed of between eighteen and twenty miles per hour. It continued to come directly toward him, and when it was about eighteen or twenty-five feet from him, believing he would be hit by the truck if he stayed where he was, he turned and ran back to the north side of the street, and just after plaintiff turned and started to run back, the truck swerved to the left and continued swerving to the left until it ran across the north gutter into the vacant lot and struck the plaintiff, at a point about five feet north of the gutter. After striking plaintiff, the truck ran about twenty-five feet before it stopped. When the truck stopped, plaintiff was lying about five feet north of the gutter. He was seriously and permanently injured.

The driver of the truck, produced by defendant, testified that he was driving the truck east on the south side of the portion of the street devoted to vehicular traffic; that he first saw plaintiff when he was about twenty-five feet distant from him; that he slowed down the truck to about fifteen miles per hour, but did not apply the brakes until he was about four or five feet from plaintiff; that when the truck was four or five feet from the plaintiff, plaintiff suddenly whirled and ran back to the north side of the street; that when plaintiff whirled to run back, he applied the brakes and swerved the truck to the left and ran it across the gutter into the vacant lot north of the street; that when the truck stopped, plaintiff was lying by the rear wheel.

Section 3 of Ordinance No. 2889 of the City of Webster Groves is as follows:

"All vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable."

The cause was tried to a jury. The trial resulted in a verdict and judgment in favor of plaintiff for five thousand dollars, and the defendant appeals.

Defendant assigns reversible error upon the giving of the following instruction at the instance of the plaintiff:

"The court instructs the jury that by ordinance of the City of Webster Groves in force and effect at the time of the accident in question it was unlawful to move or propel an automobile in the corporate limits of the City of Webster Groves in a manner not as close to the right-hand side of the highway as practicable, and if you find and believe from the evidence that the defendant, through its chauffeur and servant, was operating and running an automobile on Lockwood avenue eastwardly, approaching the intersection of Jackson road, on the 3rd of November, 1925, and the automobile of the defendant collided with and struck plaintiff, if you so find, and injured plaintiff, if you so find, at said intersection of said streets, and at the time of the striking of plaintiff, if you believe plaintiff was struck by said automobile, said automobile was being run and operated by the defendant, through its chauffeur at a place on said Lockwood avenue which was not as close to the right-hand side of the said Lockwood avenue as practicable, then the running and operating of said automobile, which was not as close to the right-hand side of the said Lockwood avenue, in the direction in which said automobile was going, was negligence. And if you find and believe from the evidence that such negligence directly contributed to cause plaintiff's injuries, if any, and you further find and believe that plaintiff was exercising ordinary care for his own safety, then your verdict must be for the plaintiff."

The complaint made against this instruction is set forth by defendant's counsel, as follows:

"Defendant contends that this instruction is erroneous for the reason that it authorized the jury to find for plaintiff if they believed from the evidence that the facts predicated therein 'directly contributed' to cause plaintiff's injuries.' The words quoted from the instruction do not tell the jury that if they found the facts stated therein caused the injuries complained of by plaintiff they would find for plaintiff, but told the jury that if they found from the evidence 'that such negligence directly contributed to cause plaintiff's injuries, if any, and you further find and believe that plaintiff was exercising ordinary care for his own safety, then your verdict must be for plaintiff.' Under this instruction the jury might well have found, and doubtless did find, that plaintiff was not guilty of contributory negligence, but that he was injured by the concurring negligence of the driver of the truck in evidence and some unknown cause not stated in the petition or shown by the evidence. Clearly this is error. This for the obvious reason that the uncontradicted evidence in this case shows that plaintiff's injuries were the result either of the negligence of the driver of the truck or plaintiff's own negligence in suddenly whirling about and running immediately in the path of the oncoming truck, or the joint negligence of both. In this situation the jury would be authorized to find for plaintiff in the event only that negligence on the part of the driver of the truck directly caused the injuries complained of by plaintiff, and that plaintiff's negligence, if any, in nowise contributed to cause such injuries. If plaintiff were guilty of negligence which contributed to cause his own injuries, quite plainly plaintiff was not entitled to recover. In other words, if the negligence, if any, of defendant merely 'directly contributed' with the negligence of plaintiff, to cause the injuries complained of, then plaintiff was not entitled to recover."

We can see no reason why the jury, on account of this instruction, should have gone outside the facts as shown by the evidence in this case to find some cause that contributed with the negligent act of the defendant hypothesized in the instruction, to cause the plaintiff's injury. The instruction does not commission them to do so. Certainly it does not direct or suggest that they predicate liability on any unknown cause outside the facts of the case, but it directs them to predicate liability solely upon the negligent act hypothesized in the instruction. But suppose the jury had concluded that they must go outside the facts of the case to find a cause which contributed with the specific act of negligence hypothesized in the instruction, in order to hold the defendant liable, how could this have been harmful to the defendant? Rather it would have been harmful to plaintiff, for the jury would have thus imposed upon

themselves the duty of supplying a fact not shown by the evidence, and not essential to liability. In this case, as in practically every personal injury case; it required the concurrence and co-operation of a number of acts, events, and agencies, to bring about the plaintiff's injury. If the instruction had required the jury to find as an essential element of liability on the part of defendant that the specific act of negligence hypothesized in the instruction solely caused the plaintiff's injury, it would have been clearly erroneous, and would have put the plaintiff out of court. It is unquestionably the law that if the specific act of negligence hypothesized in the instruction directly contributed to cause plaintiff's injury, and the plaintiff himself was in the exercise of ordinary care, so that no negligent act on his part directly contributed to cause his injury, he was entitled to recover, and we see no reason why it should be held error to correctly declare the law to the jury. The jury may have thought that the act of defendant's driver in running the truck at the rapid rate of speed of twenty miles per hour, without applying the brakes and slowing the truck down, or having it under control, as it approached the plaintiff on the street, was a negligent act contributing to plaintiff's injury, or they may have thought that it was not a negligent act. Certainly, however, they were entitled to conclude that the act, whether negligent or not negligent, directly contributed to cause plaintiff's injury. If the act, whether negligent or not negligent, directly contributed to plaintiff's injury, then the negligent act of defendant hypothesized in the instruction did not solely cause, but only contributed to cause, plaintiff's injury. Shall the defendant go acquit for this act of negligence, though it directly contributed to plaintiff's injury, because another act of defendant, negligent or otherwise, also contributed to cause the injury? And how could the jury be advised that defendant was liable for the act of negligence hypothesized, except by telling them, as this instruction does, that the defendant is liable if such act of negligence directly contributed to cause plaintiff's injury and the plaintiff himself was in the exercise of ordinary care? So, too, the jury were certainly entitled to find under the evidence that the act of the plaintiff in suddenly turning about and running back to the north side of the street directly contributed to his injury. But it was the province of the jury to say whether this act was or was not a negligent act. They might have found under the evidence that this was a negligent act, or they might have found that it was a highly prudent act. They evidently found it was not a negligent act. Shall the defendant go acquit of responsibility for its negligent act hypothesized in the instruction because the plaintiff's nonnegligent act directly contributed to his injury? Clearly the plaintiff was entitled to recover for the negligent act of the defendant

194

directly contributing to cause his injury, though his own non-negligent act also contributed to cause his injury. The defendant is liable for the plaintiff's injury if its negligent act hypothesized in the instruction directly contributed to plaintiff's injury, regardless of what other acts of the defendant, negligent or otherwise, or non-negligent acts of the plaintiff, may have entered into the chain of events forming the causal connection between the negligent act hypothesized and the plaintiff's injury. Nor do we see any reason why the jury should have concluded, on account of this instruction, that the defendant was liable if its negligence directly contributed with the plaintiff's negligence to cause his injury. The instruction in express terms told the jury that they must find as an essential to a verdict for plaintiff that the plaintiff himself was in the exercise of ordinary care. If this did not with sufficient clearness and simplicity advise the jury as to the effect of plaintiff's own negligence, they had the defendant's instruction to further enlighten them, in which they were told that if the plaintiff's negligence "directly contributed to cause" his injury, he was not entitled to recover. No way has suggested itself, and none has been suggested by defendant, as to how the law of the case could have been more clearly defined to the jury than it was defined by these instructions. But if defendant thought that the jury needed further instructions to clarify the law as defined in instructions given, it was at liberty to request such further instructions. This the defendant did not do, and it is in no position to complain here. There was nothing in the plaintiff's instruction which would have conflicted in any way with any proper declaration of the law, which the defendant might have requested.

Defendant in support of its view relies on the decisions of our Supreme Court in the following cases: Hof v. St. Louis Transit Co., 213 Mo. 445, 111 S. W. 1166; Krehmeyer v. St. Louis Transit Co., 220 Mo. 639, 120 S. W. 78; and Moon v. St. Louis Transit Co., 247 Mo. 227, 152 S. W. 303. In the Hof and Moon cases instructions similar to plaintiff's instruction in the present case were held erroneous. The first of these cases was decided in division No. 1 and the other in division No. 2. The Krehmeyer case, in which an instruction similar to the instruction in the present case was under review, was decided en banc. But a majority of the judges did not concur in holding the instruction in that case erroneous. Only three of the judges concurred in so holding. Three of the judges dissented in toto. The other declined to concur in holding the instruction erroneous, but concurred in the result only, distinctly placing his concurrence in the result on other grounds.

The latest ruling of our Supreme Court upon an instruction like the one under review here is found in the case of Evans v. Klus-

meyer, 256 S. W. 1036, decided in division No. 2, wherein the court said:

"This instruction correctly declared the law. . . . The phrase 'directly contributed to,' as used in the instruction, cannot be reasonably construed as other than synonymous with proximate cause, by which we mean such a cause as operated to produce a particular consequence without the intervention of an independent cause, in the absence of which the injuries would not have been inflicted. . . . Thus construed, the phraseology of the instruction is not vague or misleading, and, having correctly declared the law under the evidence, it should have been given."

Manifestly the Evans case is controlling here.

The Commissioner recommends that the judgment of the circuit court be affirmed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Dawes, P. J.,* and *Becker* and *Nipper, JJ.,* concur.