John Yerger v. Hugh R. Smith, Cecil Clay, Reis-Moran Lumber Company, a Corporation, and Paul Reis, Appellants.—89 S. W. (2d) 66.

Division One, December 18, 1935.

*Carter & Jones* and *Richard S. Bull* for Hugh R. Smith and Cecil Clay.

*Wilbur C. Schwartz, J. Edward Gragg* and *Morton K. Lange* for Reis-Moran Lumber Company and Paul Reis.

*Gallant & Hannigan* and *Robert L. Aronson* for respondent.

BRADLEY, C.—This is an action for personal injury. On a jury trial plaintiff obtained a verdict and judgment against all the defendants for $15,000. Motions for new trial were overruled and defendants appealed. Defendants, Smith and Clay, filed joint affidavit for appeal and that appeal is No. 33276. Defendants, Reis-Moran Lumber Company and Paul Reis, filed separate affidavits for appeal and that appeal is No. 33586. Joint abstract of the record was filed. The charges of negligence against defendants, Smith and Clay, are the same, while different charges of negligence are made against defendants, Reis-Moran Lumber Company and Reis.

Plaintiff was injured October 12, 1931, while riding as a guest or passenger in an automobile owned by the lumber company and driven, at the time, by defendant, Reis. Plaintiff's injuries were caused by the automobile running against a mule on Highway No. 61 a short distance south of the city of St. Louis. The mule was owned by Smith and was, at the time, in charge of defendant Clay, Smith's agent and employee. Clay was riding one mule and had another along.

It is alleged that defendants, Smith and Clay, were negligent: (1) In riding the mules on the traveled portion of the highway while it was dark and raining and the mules could not be seen; (2) in riding the mules in such manner as to block the traveled portion of the highway when it was dark and raining; (3) in riding and leading the mules on the highway when it was dark and raining without carrying a lantern or giving a warning of the presence of the mules; and (4) in not riding the mules as close to the right-hand side of the highway as was practicable under the circumstances. The petition alleges that defendants, Reis-Moran Lumber Company and Reis, were negligent: (1) In failing to sound the horn or give warning of the approach of the automobile; (2) in driving the automobile at a dangerous and excessive rate of speed and at a rate of speed so as to endanger the life, limb and property of another and more particularly plaintiff; (3) in failing to keep the automobile as close to the right hand side of the highway as was practicable when in operation; and (4) a violation of the humanitarian rule. The defendants answered separately by general denials.

Defendants, Smith and Clay, assign error: (1) On the refusal of their separate requests at the close of the case for a directed ver-

dict; (2) on the submission of the cause to the jury without instructions on the part of plaintiff as to what facts it was necessary to find in order to find for plaintiff; (3) on the refusal of withdrawal instructions D, E, F and G requested by defendant Smith; and (4) on an alleged excessive verdict. Defendants, Reis-Moran Lumber Company and Reis, assign error: (1) On the refusal of their separate requests at the close of the case for a directed verdict; and (2) on an alleged excessive verdict.

Stated most favorably for plaintiff, the evidence tends to show the following facts: On the day of plaintiff's injury he had unloaded a car of coal for the defendant, Reis-Moran Lumber Company, at Mehlville, a short distance south of the city of St. Louis on Highway No. 61. About five-thirty P. M., and after plaintiff's day's work was done and after he had gone to his father's home near by, and at the father's home, plaintiff was asked by defendant Reis, if he, plaintiff, "wanted to ride along with him to the airport," which was in Illinois, but not far away. Defendant Reis had arranged for a truck to haul an airplane back from the airport. The lumber company was not concerned about the airplane. Plaintiff and Reis left Mehlville around six-thirty P. M. in a Chevrolet coupe, owned by the lumber company and driven by Reis as stated. Reis had finished his day's work, but had not had supper and he intended to go by his home, which was eleven miles from Mehlville, for supper before going to the airport. It was dark, misting rain and foggy. Highway No. 61, at all places concerned was about forty feet in width and had four traffic lanes, each lane about ten feet in width. The width of the highway had been recently increased and Smith had a contract in connection with this improvement. A new slab of concrete about ten feet in width had been added on each side of the old roadway. The new slabs were light in color and the two old center slabs or lanes were of asphalt and were dark. A dirt shoulder about nine feet in width was on each side of the roadway, but the shoulders were new and soft. When plaintiff and defendant Reis left Mehlville, they proceeded north on the east lane of the asphalt. About a mile north and shortly after they left Mehlville, the automobile collided with a mule, ridden by defendant Clay, and traveling north on the same dark colored traffic lane on which Reis was driving, according to the evidence of defendant Reis who was called as a witness for plaintiff. There was another mule, according to Reis, "about four and a half feet or five feet" from the east edge of the east lane, and the mule that was struck was "about four feet" from "the middle of the road," and these mules, according to Reis, had on the harness and "were hitched together with a rope." Defendant Clay, who had been "moving dirt from" a basement in Mehlville that day for Smith, was on his way to the camp with the mules after the day's work. Clay had no light or

lantern and there was no light or lantern about the mules. According to Reis, there were two other mules, five or six feet in front of the two mentioned, and "two lads were walking between" the rear mules and "the shoulder." Reis was driving about twenty-five miles per hour and did not see the mules until he started down from the crest of a slight elevation when his "lights focused on" the mules, and the rear mules were then "about twenty-five feet ahead" of the automobile. Reis estimated the distance his lights "illuminated the roadway" at twenty or twenty-five feet, and said that his brakes "were in pretty good condition," and that he was twenty or twenty-five feet "back from this rear mule" when "he started to stop;" that he did not sound the horn, but applied the brakes "and swerved out to the left of the road. As I did, the back end of the machine skidded and the side of the car struck the rear mule," and "the mule sat right down on the running board and Cecil Clay stepped off the mule then." Defendant Reis said that his car did not move after he struck the mule until he started up in order to turn around to take plaintiff back to Mehlville to a doctor. When "the car swung" to the left plaintiff "hit the corner there and the windshield" and his right arm was seriously injured, the broken bone above the elbow protruded through the flesh. There was no windshield wiper on the right side of the car, and plaintiff, because of the rain and fog, was not able to see anything of consequence. Reis said that the windshield was broken out by the impact, but that otherwise the car was not damaged except the running board.

Defendant Clay, as a witness for himself and Smith, testified that he was riding the mule that was struck; that there were only two mules along, and that he was riding one and leading the other; that both were on the east lane of the roadway, and the one he was leading "was right at the curb," and that the one he was riding was just to the left of the one he was leading, "as close up as it could get;" just close enough for the two "to walk along side by side." The mule, Clay says, fell with its front part on the east shoulder and its "rear part on the slab," and died there in a short time from the impact. Alvin Lucas, according to Clay and Lucas, was the only one, except Clay, along with the two mules. Lucas testified that he was about thirty feet behind the mules and was "walking on the east curb," and that defendant Reis was driving so near the east curb that the car "hit the trousers" on Lucas. Harry Clark, called as a witness for defendants, Smith and Clay, was at the scene in a few minutes after the accident and testified that he saw marks on the payment which he took to be skid marks of a car, and also saw glass "scattered on the pavement;" and that the marks extended fifty-eight feet diagonally (northwest) from a point six feet back from where the mule was; that these marks extended "to the left hand side of the yellow mark which is the center of the high-

way.'' Defendant Smith also went to the scene of the accident a few minutes thereafter, and his evidence was corroborative of witness Clark as to the skid marks on the roadway. Smith also said that on the roadway there was scattered glass which commenced near the rump of the mule and extended, ''all the way across the road.'' Smith went from the scene to Mehlville where defendant Reis had taken plaintiff to a doctor, and while there Smith saw the car Reis was driving and Smith said that ''the glass was practically all broke out of it, and the side was caved in and the door and the fender.''

It was contended by defendants, Smith and Clay, that they were not negligent in having the mules on the highway in the manner and under the circumstances as plaintiff's evidence tends to show. Plaintiff's evidence, for the consideration of the demurrers, must be taken as true, Kitchen v. Schlueter Mfg. Company, 323 Mo. 1179, 20 S. W. (2d) 676, and if anything favorable to plaintiff's case appears in defendant's evidence, that too, under the rule, may be invoked in favor of plaintiff and against the demurrers. [Sing, v. St. Louis-S. F. Ry. Co. (Mo.), 30 S. W. (2d) 37.] Under these well-known rules, we have the following as established facts in considering the demurrers as to defendants Smith and Clay. (1) It was dark, raining and foggy; (2) the paved roadway where the mules and defendant Clay were traveling, was forty feet in width, with four traffic lanes, each ten feet in width and was within five or six miles of a large city, and the time was about six-thirty P. M.; (3) the two inside lanes were dark in color and the two outside of light color; (4) defendant Clay and the mules were traveling north, the ridden mule being on the east lane of the dark colored pavement and the other mule on the east lane of the light colored pavement and attached with a rope to the ridden mule; (5) the color of the mules is not given, but it appears that the ridden mule was not white; and, (6) Clay had no lantern or light and there was no lantern or light on either of the mules. Under these facts Smith and Clay say, as stated, that their requests for a directed verdict should have been given, and as supporting this contention, these authorities are relied on: Sec. 12803, R. S. 1929; 5-6 Huddy's Cyc. of Automobile Law (9 Ed.), sec. 245, p. 395; 3 Blashfield's Cyc. of Automobile Law, p. 15; Berry on Automobiles (4 Ed.), secs. 184, 185; Yore v. Transfer Co., 147 Mo. 679, 49 S. W. 855; Roper v. Greenspon (Mo. App.), 192 S. W. 149; Linstroth et ux. v. Peper (Mo. App.), 188 S. W. 1125; Boyer v. North End Drayage Co. (Mo. App.), 67 S. W. (2d) 769; Hannah v. Butts (Mo. App.), 14 S. W. (2d) 31; Myers v. Velasquez (C. C. A.), 16 Fed. (2d) 111; Fullenwider v. Brawner (Ky.), 6 S. W. (2d) 264; Bombard v. Newton (Vt.), 111 Atl. 510, 11 A. L. R. 1402; Meredith v. Kidd (La. App.), 147 So. 539;

Pollet v. Robinson Lumber Co. (La. App.), 123 So. 155; Cook v. Tooke (La. App.), 135 So. 917.

On the question in hand there is no wealth of authority in our own jurisdiction. Huddy says that "in the absence of statute or ordinance, it is not negligence to ride or drive animals, not hitched to a vehicle, along the highway after dark, without a light." In support of this statement, Pollet v. Robinson Lumber Company (La. App.), 123 So. 155, supra, is cited. In that case, it was alleged that plaintiff was driving his car at a moderate rate of speed along the highway, and desiring to pass another car, he sounded his horn and pulled to the left; that as he attempted to "straighten out" on the road, he discovered immediately in front a team of mules, harnessed, but not hitched to a vehicle, "one of which mules was being ridden and driven by a negro on the left hand side of the road in the direction of Baton Rouge," and that the mules collided with his car. It was held that the petition did not state a cause of action; that the defendant "was within his rights in driving his mules along the highway;" that no applicable law required that mules not hitched to a vehicle should be accompanied after dark by a light.

In 3 Blashfield, Cyc. of Automobile Law, page 15, the text says that "in the absence of a statute to the contrary, it is not negligence for a person driving cows at night to fail to carry lights." In support is cited Meredith v. Kidd (La. App.), 147 So. 539, supra. In this case, plaintiffs sued to recover for the loss, among other items, of his mules, which were struck and killed in the nighttime by the car of defendant and driven by him on a paved highway. The mules were tied to the rear of a horse-drawn trailer traveling south. Defendant Kidd was going south in his car, and "just before the impact" Kidd was blinded by the lights of a car going north. Just as Kidd "passed the car with the bright lights," the trailer and the mules "suddenly loomed up" in his path and he swerved to the left, but struck the mules. The mules and trailer were in charge of plaintiff's agent to whom he had given a lantern to be lighted and attached to the rear of the trailer. The agent at first attached the lighted lantern to the rear of the trailer, but this "interfered with the mules," and it was taken down and placed on the front end of the trailer, but swung lower than the bed of the trailer, so that it might be seen from the rear, but the trial court found that the lantern was not visible from the rear of the trailer. It was also found that both plaintiff and defendant were negligent, and recovery was denied on the theory that plaintiff's negligence was the proximate cause of the damage he sustained. The defendant was held to be negligent because of speed in excess of a statute. On appeal, it was held that the mules "were not hitched to or engaged in hauling a vehicle," and that they "were in the same situation as if being led or driven in any other way, and that liability as to them depends

upon the law governing livestock upon a highway rather than vehicles." The court, in support of this holding, quoted from Huddy as above set out, and cited Pollet v. Robinson Lumber Company, supra.

In Cook v. Tooke (La. App.), 135 So. 917, it appears that the plaintiff while driving on the highway in the nighttime, struck some cows and sustained damage to his car. He sued the owner of the cows, which had gotten out of the pasture and were unattended at the time. It was held that the owner was not at fault and plaintiff was denied recovery. In Bombard v. Newton (Vt.), 111 Atl. 510, plaintiff sought to recover for the loss of two cows. Plaintiff's agent was, in the nighttime, driving two of plaintiff's cows south on a straight improved highway "much used by automobiles." The driver had no light and "did not have any halter or rope attached to the cows." Defendant approached from the south in his car. The cows and their driver were on the right-hand side of the road, and defendant's car collided with the cows and killed them. It was found that the defendant was driving at an excessive rate of speed, but he sought to defeat recovery on one ground, among others, as we read, that plaintiff was guilty of contributory negligence as a matter of law, in driving the cows on the highway in the nighttime without any light. Of this defense it was ruled that "we cannot say as a matter of law" that it was necessary for the plaintiff to carry a light.

Fullenwider v. Brawner (Ky.), 6 S. W. (2d) 264, l. c. 266, was an action by a horseback rider to recover damages for personal injuries and for the loss of the horse, sustained by being struck by an automobile. Plaintiff Brawner prevailed below and on appeal defendants complained of the refusal to give an instruction which told the jury in substance that "it was the duty of plaintiff to keep reasonably to the right side of the road as he approached the automobile, and if he failed to do so, and by reason thereof was injured, the jury should find for the defendants." In ruling this assignment the court observed that it raised a question "that has not been directly decided;" that there was no statute "defining the duties of a pedestrian or a person riding on horseback on the public highway," and that absent a statute "such travelers are governed by the common law," and then after stating that it is the duty of all persons to exercise ordinary care for their own safety, the court said: "It is the duty of a person riding a horse along the highway to exercise ordinary care for his own safety. It is a question for the jury whether such care was exercised under the particular circumstances of each case. In cases where there is no statute so providing, the court has no right to require a traveler on the highway at all times and under all conditions to remain on the right-hand side of the road. It is for the jury to determine under

the definitions we have adopted whether his act in going on any part of the road is negligent.''

Yore v. Transfer Company, 147 Mo. 679, 49 S. W. 855, dealing with the rules of the road at common law held (head note) that ''it is not the law of this State that a teamster, driving a wagon along a street in which a street car line is operated, is required to use one side of a street to the exclusion of the other, or that he is. guilty of negligence, because he was traveling on the north side of the street going eastwardly, when a collision between his team and a footman occurred, nor can any presumption of negligence arise from that fact alone.''

Roper v. Greenspon (Mo. App.), 192 S. W. 149, l. c. 155, Id., 272 Mo. 288, 198 S. W. 1107, L. R. A. 1918D, 126, was an action to recover for personal injuries received by plaintiff about nine-forty-five P. M., while driving an automobile on a street in St. Louis, caused by collision with steel beams extending over the rear of a. wagon of defendants. Plaintiff pleaded an ordinance which, it was claimed, required a light or lantern so placed as to be visible from the front and rear of the wagon. Common-law negligence was also relied upon. Defendants claimed that they had complied with the ordinance insofar as it required lights. Plaintiff was driving east on Lawton and the wagon, headed north, was standing on the inter-section of Lawton and Channing, with the front wheels ''a few inches west of the east curb line of Channing Avenue and a few feet north of the north curb line of Lawton Avenue,'' and the rear wheels were south ''a little beyond the center of Lawton,'' and the beams ex-tended on south from the wagon eight or nine feet. The case went to the jury on ''the theory that, even though defendants complied with the ordinance mentioned, they could nevertheless be found negligent in permitting the wagon and beams to remain in the street ''without giving any signal or warning to approaching vehicle driven by plaintiff, and without displaying a light on the heavy I-beams.'' The Court of Appeals held that plaintiff saw the wagon when he was twenty feet away, and that since he could stop in seven feet, that the absence of a light, if shown, was not the cause of the injury complained of. The subject of common-law duty was also considered and on this the court said: ''The only negligence, if any, attributable to defendants, aside from the breach of the ordinance, if any, must be found in the failure of the driver of the reach wagon to have a light on the beams themselves, if he did so fail, or in his failure to otherwise warn the drivers of approaching vehicles of the presence of the beams. Generally speaking, at common law, the driver of a wagon upon a highway at night is under no duty to carry a light to warn others of the presence of his vehicle or its load.'' The Court of Appeals reversed the judgment in Roper v. Greenspon without remanding, but there was a dissent, and the cause was certified here.

The result here was that the judgment was reversed, but the cause was remanded. On the question of common-law negligence we said: "Going now to the common-law negligence. If it be a fact that the intersection was poorly lighted, as there is evidence tending to show; and, if it be a fact that this wagon and its load blocked the whole south side of Lawton Avenue, and most of the north side, as there is some evidence tending to show; and, should it further appear that this highway running east and west was being continuously used, and that the travelers to the east used the southern portion of the street, we are not prepared to say that this negligence should not likewise have gone to the jury. True it is that the mere stopping of the wagon under the circumstances was not negligence, nor was the delay of thirty minutes or more in getting it out negligence, but if it was dark and the wagon's contents could not be seen, and the wagon and its contents did in fact block the travel of that portion of the avenue we are inclined to think that the defendants and their agents owed some duty toward the traveling public, by way of warning or signals of some kind." As appears, it was held in Roper v. Greenspon that under the facts there the defendants "owed some duty to the traveling public by way of warning of some kind" of the presume of the wagon in the street.

Linstroth et ux. v. Peper (Mo. App.), 188 S. W. 1125, 1. c. 1127, was to recover for the death of plaintiff's infant son who was struck and killed on a street in St. Louis, by an automobile owned by defendant and driven at the time by her agent. This cause was prior to the enactment of our statute, subdivision (b) of Section 7777, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7777, p. 5213), requiring motor vehicles in operation to be "kept as close to the right-hand side of the highway as practicable." In the Linstroth case an ordinance was pleaded requiring about the same as does subdivision (b) of the statute. The question on the violation of the ordinance was submitted, but the ordinance was not introduced. The judgment was reversed and the cause remanded because of this. In discussing the common-law duty of a driver of a vehicle the court said: "At common law there was no duty imposed on the chauffeur or driver of a vehicle to exercise more than ordinary care and no requirement that he should occupy any particular side of the road, or as here said, to keep 'as near the right hand curb as possible.'"

Boyer v. North End Drayage Company (Mo. App.), 67 S. W. (2d) 769, 1. c. 770, was to recover for personal injury caused by being struck by a motorcycle on a street in East St. Louis, Illinois. Plaintiff's evidence was that he was crossing at the intersection on an east and west street, and was going north; that the motorcycle was going east on the street which plaintiff was crossing; and that when plaintiff was near the north side of the street he was struck by the motorcycle. Plaintiff's claim was that the motorcycle was on the

wrong side of the street and the jury was instructed on such theory. Plaintiff did not plead the Applicable Statute Law of Illinois, and on appeal, defendant's negligence was considered from the viewpoint of the common law, taking judicial notice that Illinois is a common-law state, and disposed of the case under the common law of Missouri, and ruled that the question before the court was "whether or not, under the common law, the driver of a vehicle had to drive on the right hand side of the road," and ruled that "at common law a driver of a vehicle had the right to drive upon any part of the highway," citing Linstroth v. Peper, and Yore v. Transit Company, supra, and Cool v. Peterson, 189 Mo. App. 717, 175 S. W. 244.

Hannah v. Butts (Mo. App.), 14 S. W. (2d) 31, was to recover for injuries sustained by an automobile, in the nighttime, striking from the rear, plaintiff's wagon. Plaintiff, on the right hand side, was going west on U. S. Highway No. 50 on the paved roadway. Defendant's automobile going forty or fifty miles per hour, struck the rear of the wagon. It was contended that, notwithstanding there was no statute requiring plaintiff to have a light on his wagon, that, nevertheless, he should have had one. It was held that such question was for the jury and that the plaintiff was not guilty of contributory negligence as a matter of law "because he did not have a light upon his wagon."

In Myers v. Velasquez (C. C. A.), 16 Fed. (2d) 111, plaintiffs below sought to recover for personal injury and other items of loss, caused by an automobile running into the rear of a one-horse wagon in which plaintiffs were riding along the highway. Defendant contended that plaintiffs were guilty of contributory negligence because they did not drive on "a good road running parallel and near to the road on which the accident occurred and on which horse-drawn vehicles usually traveled, and which few automobiles used, while the road on which the accident . . . happened was much traveled by automobiles." It is stated that the principal error assigned was the action of the court in excluding the evidence as the parallel road, and the remarks of the court. It appears that the trial court "did no more than to say in the presence of the jury that the plaintiffs had the right to travel the main highway and were not required to seek another road." It was ruled that the assignment was "wholly frivolous." In the cause at bar it is contended by plaintiff that defendants Clay and Smith should, under the circumstances, have had the mules on the shoulder of the road. We find no text or case to support such theory. Smith and Clay, in their briefs, call our attention to Section 12803, Revised Statutes 1929, as amended, Laws 1931, page 204 (Mo. Stat. Ann., sec. 12803, p. 3426). This section is a part of Article 6, Chapter 88, Revised Statutes 1929, pertaining to domestic animals. This section provides that, "Nothing contained

in this article shall be construed as to prevent owners or other persons from driving any of the species of animals enumerated in this article from one place to another, or along any public highway." Olden v. Babicora Development Company (Cal.), 290 Pac. 1062, l. c. 1065, was an action for personal injury caused when an automobile was driven from the highway in order to avoid collision with some cattle being driven on the highway in the nighttime. Plaintiff charged negligence on the part of the defendants "in driving the cattle along the highway after dark, in a negligent, careless, reckless and unlawful manner and without having a sufficient number of herders on duty to keep the road open, so as to permit the passage of vehicles thereon." Defendants contended they had all the herders the law required and that the court should say as a matter of law that they were not negligent. There was a statute which provided that "no person shall . . . drive any such live stock upon, over or across any public highway between the hours of sunset and sunrise without keeping a sufficient number of herders on continual duty to open the road so as to permit the passage of vehicles." In answering the contention that the court should hold that the defendants in the California case were not negligent, it was ruled that the statute mentioned was not all of the law affecting one who is driving cattle along the highway in the nighttime.

We have a statute, Section 7778, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7778, p. 5222), requiring motor vehicles, as therein specified, to have lights, and also, we have a statute, Laws 1933, page 365, requiring horse-drawn vehicles to have lights as therein specified, but we have no statute pertaining to lights in connection with animals, not attached to a vehicle, but being driven along the highway. The regulation of such is still under the common law. Smith and Clay were not required to use the shoulder of the road to take the mules back to camp, but they were required to exercise ordinary care to use the road in such manner as not to endanger others, and the conditions obtaining at the time ought to and do affect the question of ordinary care. We are not willing to say that, under the facts as established by plaintiff's case, that defendants Smith and Clay were as a matter of law, not guilty of negligence. To so hold would be to say that under the facts from plaintiff's case, negligence on the part of Smith and Clay could not be inferred. Whether or not negligence *can* be inferred from a given state of facts is a question of law for the court, and whether or not negligence *ought* to be inferred from the given state of facts, if the court holds it can be, is a question for the jury. [Olden v. Babicora Development Company, supra.] And we say, as said in the Olden cases of a similar subject, our statute, Section 12803, as amended, is not all the law on the subject. Also, it will be noted that in Hannah v. Butts, supra, it was held that the fact that plaintiff had no light on his wagon,

as that fact affected the question of contributory negligence, was for the jury, although there was then no statute requiring a light on the wagon. We do not rule that under any and all circumstances, one conducting animals along the highway in the nighttime, as was defendant Clay, should have a light or should use any particular portion of the highway. Considering the development of roads and traffic, there can be no definite rule in this day. Each case must, of necessity, depend upon its own facts. The common law continually expands with the progress of social development in order to meet the exigencies and usages that arise of necessity from this growth and progress of society. [State ex rel. Schlueter Mfg. Co. v. Beck, 337 Mo. 839, 85 S. W. (2d) 1026, 1. c. 1029.] No question of negligence arose on the part of Clay by merely riding the mule on the traveled portion of the highway "while it was dark and raining." He had a right to do that, but the first specification of negligence against Smith and Clay is in negligently riding the mules on the traveled portion of the highway while it was dark and raining and while "the mules could not be seen," which means could not, by the use of the care required, be seen by those who might be in peril by the presence of the mules, and under the facts here, we think such question was for the jury. The third specification of negligence against Smith and Clay, as stated, is in negligently riding and leading the mules on the highway when it was dark and raining without carrying a lantern or giving warning of the presence of the mules. The first and third specifications are so related as to be, in effect, one and the same. As stated, plaintiff's evidence tended to show that the mule being led was about four and a half or five feet from the east side of the east lane, and the ridden mule about four feet from the middle of the road. In this situation, the mules were about eleven feet apart and a wholly different situation than would be where a single animal is ridden or driven, unattached, along the highway. It is our conclusion that under the facts here, the question of negligence on the part of Smith and Clay, in the manner charged in the four specifications was one for the jury.

█ It is further contended by defendants, Smith and Clay, that even though the manner, under the conditions, in which the mules were on the highway, made a submissible case as to their negligence, yet plaintiff cannot recover as to them because, it is claimed, the failure of defendant Reis to have the automobile equipped with lights as required by law, was the sole proximate cause of plaintiff's injury. Section 7778, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7778, p. 5222), provides, among other things, that "for the purpose of revealing its position and direction, a motor vehicle, while on the highway . . . during the period from one-half hour after sunset to one-half hour before sunrise, and at all times when fog or other atmospheric conditions render the operation of

motor vehicles dangerous on the highway, shall carry lighted signal lamps as herein required; such lamps shall be so constructed, mounted and adjusted as to project the required kind of light so that it shall be plainly visible under normal atmospheric conditions from a distance of at least five hundred feet in the direction projected. Motor vehicles . . . shall display at least two white lights mounted at the front and directed forward, and one red light mounted at the back and directed to the rear." Defendant Reis testified that the lights on the car he was driving were "the regular Chevrolet headlights;" that the "bright lights" were on, and that "under fair weather conditions those lights would throw out a glare and reveal the highway . . . about fifty or sixty feet," and on the occasion in question Reis said the lights on the car "illuminated the roadway . . . about twenty or twenty-five feet." If it be assumed that the failure of the lights on the car Reis was driving to properly function was one of the direct contributing causes of plaintiff's injury, such would not relieve defendants Smith and Clay of liability for their negligence, if their negligence was also one of the direct contributing causes. [4 Blashfield's Cyc. of Automobile Law, sec. 2551; Bopp v. Standard Sanitary Mfg. Co., 221 Mo. App. 188, 299 S. W. 137; Strother v. Kansas City, 316 Mo. 1067, 296 S. W. 795; Ridenhour v. Oklahoma Contracting (Mo. App.), 45 S. W. (2d) 108.] The requests of defendants Smith and Clay for a directed verdict were properly refused.

█ The next assignment of Smith and Clay is on the submission of the case to the jury without instructions on the part of plaintiff as to what facts it was necessary to find in order to find for plaintiff. In plaintiff's brief it is stated that he should perhaps "criticise himself for not presenting instructions to the trial court upon the issues of liability in the case, thereby himself selecting the theory or theories of liability which he desired to have presented to the jury. But plaintiff contends that notwithstanding the fact that he did not submit instructions "selecting the theory or theories of liability which he desired to have presented," that the instructions given at the request of the defendants selected "the theories of liability on which the case went to the jury." Plaintiff says that "the two sets" of defendants in the instructions given at their request "submitted to the jury the questions of whether appellants Smith and Clay were liable to respondent under the 2d and 4th charges of negligence directed against them." As appears, supra, the second and fourth charges of negligence against Smith and Clay were (2d) in riding the mules in such manner as to block the traveled portion of the highway when it was dark and raining, and (4th) in not riding the mules as close to the right-hand side of the highway as was practicable under the circumstances. The instructions given for the defendants and upon which plaintiff relies to escape the conse-

quences of his failure to offer any instruction submitting what facts it was necessary to find in order to find for plaintiff, are Instruction 5 given at the request of defendant Reis and Instruction 7 given at the request of defendants Smith and Clay. It is argued that Instruction 5 fairly submits the question as to whether or not Smith and Clay were negligent in not riding the mules as close to the right-hand side of the highway as was practicable under the circumstances, the fourth ground of negligence charged against Smith and Clay, and it is likewise argued that Instruction 7 fairly submits the question as to whether or not Smith and Clay were negligent in riding the mules in such manner as to block the traveled portion of the highway when it was dark and raining. Instruction 5 directed that if it was found that defendant Smith by his agent "permitted the mules mentioned in the evidence to walk northwardly, one in the center of the traffic lane to the east of the center of the roadway and another one in the center of the traffic lane at the extreme east, or right-hand side, of said roadway and that he was negligent in so doing, if you so find this was negligence, and this negligence was the direct and sole cause of the collision mentioned in the evidence and that plaintiff's injuries, if any, resulted directly and solely therefrom and through no negligence on the part of defendant Paul Reis, then your verdict must be for the defendant Paul Reis."

Instruction 7 told the jury that in traveling along the road with the mule of Smith, defendant Clay was not required to so ride the mule or to otherwise proceed so that "the entire width of the pavement would be left unobstructed." Also, the instruction directed that Clay was not "obliged to see that the highway was absolutely safe for the passage of vehicles, regardless of the manner of their operation, but rather, said defendant Clay had the right to assume that automobiles driven along the highway would not be operated negligently and in disregard of the circumstances present and apparent there to the drivers of such automobiles. The extent of defendant Clay's duty, in this connection, was to exercise ordinary care for the safety of others using the highway for travel, that is, that degree of care which a reasonably prudent and careful person would exercise under the same or similar circumstances. Even if you find and believe from the evidence, therefore, that Cecil Clay and the mule he was riding were traveling on the paved portion of the highway and that said portion of the highway was thereby partially obstructed, yet if you also find and believe that he was exercising ordinary care, that is, that degree of care which a reasonably careful and prudent person would exercise under the same or similar circumstances, then plaintiff cannot recover against either defendant Cecil Clay or defendant Hugh R. Smith, and your verdict must be for said defendants."

Plaintiff makes the further contention that if instructions 5 and

7 fairly submit respectively the fourth and second grounds of negligence charged against Smith and Clay, then plaintiff's failure to instruct was harmless. If by instructions 5 and 7 the jury was definitely advised as to the basis of liability of Smith and Clay as charged in the petition and supported by the evidence, then the failure to instruct on the part of plaintiff as to what facts should be found before he could recover would be harmless. [Dorman v. East St. Louis Ry. Co., 335 Mo. 1082, 75 S. W. (2d) 854; Eberle v. Koplar (Mo. App.), 85 S. W. (2d) 919; Arnold v. May Department Store, 337 Mo. 727, 85 S. W. (2d) 748.] It is contended also by plaintiff in his brief in considering the assignment of Smith and Clay on the refusal of the withdrawal instructions that if instructions 5 and 7 fairly submit the second and fourth grounds of negligence charged against Smith and Clay, then no complaint can be made because other grounds were not submitted, because the submission of the second and fourth grounds was "tantamount to a withdrawal of all others." It is true, as a general rule, that it is harmless to refuse withdrawal instructions offered by a defendant when the plaintiff has not submitted the case on the grounds sought to be withdrawn. [Dietzman v. St. Louis Screw Co., 300 Mo. 196, 254 S. W. 59; Wallace v. Burkhart Mfg. Co., 319 Mo. 52, 3 S. W. (2d) 387; Siberell v. St. Louis-San Francisco Ry. Co., 320 Mo. 916, 9 S. W. (2d) 912; Gardenshire v. St. Louis-San Francisco Ry. Co., 224 Mo. App. 586, 31 S. W. (2d) 113.] As we have heretofore ruled, in effect, in passing on the demurrer of Smith and Clay, there was no evidence to make a submissible case on the second ground of negligence charged against them, that is that the mules blocked the traveled portion of the highway. If Instruction 5 had clearly advised the jury that plaintiff could recover against Smith and Clay only on the fourth ground of negligence charged against them, we would have here a different situation. But there is nothing in either of these instructions that even suggests such. It is our conclusion that the jury was not clearly advised what facts it was necessary to find in order to find against Smith and Clay and that plaintiff's failure to submit the theory upon which he sought recovery against these defendants was error.

In view of our holding on the assignment of Smith and Clay based on the failure of plaintiff to submit instructions, it is not necessary to pass on other assignments of these defendants.

■ We now take up the assignments of defendants Reis-Moran Lumber Company and Reis. As above stated, these defendants make only two assignments, viz.: On the refusal of their separate requests for a directed verdict at the close of the case and on an alleged excessive verdict. We shall first consider the assignment of defendant Reis based on the refusal of his request for a directed verdict. As stated, four charges of negligence were made against de-

fendants Reis-Moran Lumber Company and Reis, which for convenience, we here repeat. These charges are: (1) In failing to sound the horn or give warning of the approach of the automobile; (2) in driving the automobile at a dangerous and excessive rate of speed and at a rate of speed so as to endanger the life, limb and property of another and more particularly plaintiff; (3) in failing to keep the automobile as close to the right-hand side of the highway as was practicable when in operation; and (4) a violation of the humanitarian rule. It will be noted that there is no charge as to defective lights. The third charge of negligence against Reis is that he failed to keep the automobile as close to the right-hand side of the highway as was practicable. In order to better appreciate the assignments of Reis-Moran Lumber Company and Reis, it is necessary to repeat to some extent as to the facts. Plaintiff's evidence, for the purpose of the demurrer, established that Reis was driving north on the dark colored asphalt lane, which was the second traffic lane from the east side of the highway. There were four traffic lanes. And as shown, subdivision (b) of Section 7777, Revised Statutes 1929 (Mo. Stat. Ann., sec. 7777, p. 5213) requires that "all vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable," and this statute applies to four lane highways. [Felts v. Spesia (Mo. App.), 61 S. W. (2d) 402.] Assuming plaintiff's evidence as true as to where defendant Reis was driving, it is clear he was violating subdivision (b) of Section 7777, and his request for a directed verdict was properly refused. We do not deem it necessary to consider the request of Reis for a directed verdict as such may concern the other charges of negligence against him. The demurrer to the evidence, as the request may be called, was general, and if there was substantial evidence to support either charge of negligence, the demurrer was properly refused.

We shall next consider the assignment of defendant Reis-Moran Lumber Company based on the refusal of its request for a directed verdict. The lumber company was in no manner interested in getting the airplane from the airport in Illinois, to which airport plaintiff and defendant Reis intended to go after Reis got supper at his home. The home of Reis was eleven miles from Mehlville, from which place plaintiff and Reis started. Reis, as heretofore stated, was in the employ of the lumber company, and the car was owned by the lumber company. It is contended by plaintiff that there was substantial evidence tending to show that the lumber company furnished the car to Reis, not only to use in the discharge of his duties, but to go to the place of his employment and return at the end of the day to his home. As to whether the lumber company furnished the car to Reis for the purpose, among others, of going from his home to his place of work and returning to his home, the

record is meager. The following appears in the record from the evidence of Reis: "Q. This automobile was used by you prior to that time and at that time in going to and from work? A. Anywhere I wanted to go. Q. And the automobile was furnished to you by the Reis-Moran Lumber Company for that purpose? A. One of them. Q. That was one of the purposes, and the other purpose was to haul lumber? A. Just for the salesmen." Reis was in charge of the lumber company's planing mill, but was not an officer. It is not shown whether the lumber company maintained the car. In order to hold the master liable for the negligence of a servant, it is necessary to show not only that the relation of master and servant existed at the time of the commission of the alleged act or acts of negligence, but it is also necessary to show that at the time the servant was engaged in the master's business. In other words, the servant must be within the scope of his employment. Proof that the lumber company owned the car and that it was at the time being driven by its agent and servant raised the presumption that the agent and servant was driving it while in the service of the master. [Byrnes v. Poplar Bluff Printing Company (Mo.), 74 S. W. (2d) 20, 1. c. 26, and cases there cited.] In the Byrnes case the defendant owned and maintained the car and furnished it to the agent to enable him "to go to and fro between his place of business and his home." In the present case, there was no evidence tending to show any agreement or understanding that the lumber company furnished the car to Reis as a part of his compensation, and such was the situation in the Byrnes case. There is a distinction on the facts between the Byrnes case and the present case, in that, in the Byrnes case the car there in question was used solely by the agent and servant to go to and return from his place of work and the car was used by no one except the servant and agent, while in the present case, so far as appears, the car was used by the servant and agent through the workday solely for the master, the lumber company. The subject of when a master may be held liable under facts similar to the facts at bar is considered at length in the Byrnes case, and we do not deem it necessary to again consider that subject at length here. The present case, on the question we have now in hand, is, in principle, quite like the situation in the Byrnes case. We do not think that the fact that Reis intended, after he had supper at home, to go on to the airport, is of importance on the question. It is our opinion that the situation we have is the same in effect as if plaintiff, at the invitation of Reis, had merely been going home with Reis for supper. We rule that the question of the lumber company's liability for the negligence of Reis was one for the jury and that the lumber company's request for a directed verdict was properly refused.

Defendants, Reis-Moran Lumber Company and Reis, as above

stated, assign error on an alleged excessive verdict and in view of our ruling on the other assignment of these defendants, it is necessary to pass on the assignment based on the verdict. The verdict was for $15,000. Plaintiff, a common laborer, was injured October 12, 1931, and, at that time, was twenty-nine years old. At the time of his injury and prior thereto, his average income was $16 to $20 per week. It appears that a reasonable charge for the hospital service given plaintiff is $575 and for service of physician, $1500. On the night of the accident, plaintiff was taken to the Alexian Brothers Hospital and was there seven months and twelve days. Plaintiff's injury was confined principally to the right arm. Dr. Rudolph Hofmeister, who treated plaintiff, testified that he had a compound fracture of the humerus "with the bone protruding through the flesh and very great swelling in the entire arm." There was a fracture of both bones in the forearm "just below the elbow." He "was considerably shocked . . . and was losing considerable blood from the wound in the arm." A severe infection, osteomyelitis, developed in the upper arm and he "was quite serious for a period of several weeks." On December 5th, and after the infection had subsided, plaintiff's arm was operated on and the upper arm was opened "for a distance of about six inches" and fragments of dead bone and dead tissue were removed. The wound was sterilized and bones approximated "as well as we could." After this operation plaintiff was placed in "a plaster appliance," including his body and the arm." He was in this cast for about a month, "when the cast was opened and the dressing changed." The wound was then repacked and cast reapplied. At the end of another month the cast was removed and an "airplane splint" applied. All was not going well and on March 19th, another operation was performed "with the idea of again curetting or cleaning out a sinus that still persisted in the region of the humerus and to approximate the ulna bone in the forearm for the purpose of getting union." These operations were under a general anesthesia. At the time of the trial, March 1, 1933, the broken ends of the radius and ulna were "united only by fibrous union." Dr. Mehan made an examination of plaintiff a few days before the trial and testified that the arm was "a badly injured and deformed member;" that the forearm presented "a rounded mass" at the site of the fracture; and that "the hand is carried in an odd position;" that there was evidence of muscle atrophy at the site of the long scar in the upper arm; that movement about the elbow was markedly limited." Dr. Mehan also said that movement in the shoulder was likewise limited, "due to the attachment of the muscles of the arm and the muscles of the shoulder at the site of injury;" that movement of the wrist joint was "somewhat limited;" that the "entire use of the right arm is markedly interfered with." The elbow movement was about ten per cent normal,

and the arm could be only partly raised. The injury was permanent. Plaintiff testified that he suffered much pain, and at the time of the trial, he said that at times he had pains in the arm; that the arm was worthless; that in cold weather the arm was "numb and cold all the time;" that he had done no work since the accident. In Gordon v. Muehling Packing Company, 328 Mo. 123, 40 S. W. (2d) 693, a $17,000 verdict was approved as reasonable in an action by a common laborer forty-one years of age, for the loss of a hand which had to be amputated "just above the wrist." In that case the plaintiff's earnings were about $150 per month, while here, plaintiff's earnings were from $16 to $20 per week, but here the whole arm is practically worthless and plaintiff is twelve years younger than was plaintiff in the Gordon case. Much pain, several operations and large hospital and medical bills were present in the Gordon case and the situation is similar here. We do not think that the verdict is excessive. [Gordon v. Muehling Packing Company, 328 Mo. 123, 40 S. W. (2d) 693, l. c. 702, and cases there cited.]

Following Hoelzel v. Chicago, R. I. & P. Ry. Co., 337 Mo. 61, 85 S. W. (2d) 126, the judgment as to all defendants should be reversed and the cause remanded with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages against defendants Reis-Moran Lumber Company, and Reis, until the case is disposed of as to the liability of defendants Smith and Clay, then enter judgment for the amount of the verdict, held in abeyance, against all defendants finally held liable. It is so ordered. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.