OLIVE VITALE v. MARY DUERBECK, Executrix of the Estate of WILLIAM DUERBECK, Appellant.—92 S. W. (2d) 691.

Division One, March 10, 1936.

*Wayne Ely* and *Tom Ely, Jr.,* for appellant.

560

*Kratky, Soffer, Nessenfeld & Cox* for respondent.

564

HYDE, C.—This is an action for damages for personal injuries from an explosion in an Arcola heater. It is before this court for the second time. [See Vitale v. Duerbeck, 332 Mo. 1184, 62 S. W. (2d) 559.] The original defendant, William Duerbeck, died after the first trial and the cause was revived against his executrix. A companion case, involving injuries growing out of the same explosion, has also been here twice. [See Bloecher v. Duerbeck, 333 Mo. 359, 62 S. W. (2d) 553, 90 A. L. R. 40; Bloecher v. Duerbeck, 338 Mo. 535, 92 S. W. (2d) 681.] The last trial in the present case resulted in a verdict for plaintiff for $30,000. Defendant has appealed from the judgment entered thereon.

It is contended here, as on the three other appeals, that plaintiff failed to make a jury case and that defendant's demurrer to the evidence should have been sustained. In view of the fact that this court, in the two former appeals, held that there was substantial evidence of an internal steam pressure explosion caused by improper and negligent installation of the heating system, and that in the second appeal in the Bloecher case (decided concurrently herewith) this court again considered this question, exhaustively reviewed the evidence, and arrived at the same conclusion, it is unnecessary to fully discuss this matter a fourth time, especially because after a careful examination of all four records we are convinced that plaintiff made at least as strong a showing in this case as in any of the others. Neither is it necessary, in view of the facts stated in the opinions on the former appeals and the very comprehensive statement of facts in the companion case decided concurrently herewith, to again state in detail evidence, which is practically the same as that stated therein. (The principal witnesses were the same.) Reference is therefore made to that opinion for a description of the premises, the events prior to the explosion, the condition of the heater after the explosion, and likewise for the charges of negligence made in plaintiff's petition which are substantially the same as in this case.

It is sufficient for our ruling upon the demurrer herein to say that in this case plaintiff's evidence tended to show negligence in the installation of the heating system creating conditions which could cause an internal steam pressure explosion, namely: That the equipment installed was ordered for an open system (in which hot water and steam is not confined but can escape into the water mains); that this equipment was used to build a closed system (in which the hot water and steam is confined and can only escape through a relief or safety valve which is set to operate automatically at a certain pressure); that the return line was placed in an unheated basement instead of along the floor of the Vitale rooms as was frequently done in Arcola systems; that the safety valve

was placed in this basement only eight feet from an outside door which could not be closed, leaving it exposed to a north opening about two feet wide; that this safety valve was installed upside down in a position so the water would be likely to freeze in it and also sand (which was shown to be present in new radiators) and sediment would be likely to collect in it either of which would interfere with its operation; that the overhead pipes were installed so that the highest point in the system was over the bedroom radiator, where there was no air vent, instead of over the heater, where the only air vent provided was placed, which would cause an air pocket to form at that point and prevent circulation of the water in the system and result in the formation of steam; that no gauges were put on the heater to show either the amount of water in the system or the pressure created; and that there was no thermometer put on it to indicate the water temperature. It was further shown that the system did create steam (it pounded and knocked and the man who installed it let steam out of it when called on these occasions); that the pipes were not properly fitted so that there were leaks in the system which would reduce the amount of water it in; that it did not operate satisfactorily even in mild weather until after several changes were made by the man who installed it (he first put all the water pipes in the basement and later changed the hot water pipes to the ceiling of the kitchen and bedroom); that the first really cold weather after it was installed commenced on the day before the explosion; and that it went below zero that night and was very cold all the next day. The heater did explode and plaintiff had expert testimony to the effect that the freezing weather, the improper installation of the heating system in the particulars above described, and the condition of remains of the heater (the entire front water section except a part of the top was blown to pieces, and the four middle sections were blown away from the back section) showed that it was an internal steam pressure explosion, in the opinion of these experts. We must hold, as heretofore, that this was substantial evidence, which required the question to be submitted to the jury.

Defendant again argues the impossibility of a steam explosion from the firing of the heater, as stated by the Vitales, and the amount of fuel which plaintiff's testimony shows was used. However, there is expert testimony that it was possible, which we cannot say is unbelievable, and the claimed course of events cannot be said to be so clearly in violation of physical laws and scientific knowledge as to be obviously impossible. Defendant had expert testimony that it was not possible and also to the effect that the condition of the remains of the heater after the explosion and the surrounding circumstances disclosed by the testimony, in their opinion, showed

that the explosion took place in the fire box and was caused either by gases formed from the use of improper material for fuel (leather, rubber, etc.) or from high explosives (dynamite or blasting powder) placed therein. Of course, it is not at all unreasonable to believe that steam, if confined, has force powerful enough to cause such an explosion. Defendant further contends that the testimony of Vitale and Carter in all the trials has been so contradictory as to destroy its probative value. As held in the Bloecher case, all these matters were for the jury. Defendant also argues that the demurrer should have been sustained because the installation of the heating system was made by an independent contractor for whose negligence defendant would not be liable. This question has been thoroughly discussed in the other opinions, above referred to, and this defense held not to be available to a landlord against his tenant under the circumstances shown in this case. [See, also, note 90 A. L. R. 50; U. of Mo. Bulletin, 50 Law Series 62; Restatement of Law of Torts, sec. 364 (c).] We adhere to the ruling heretofore made for the reasons stated in those opinions. We, therefore, hold that the court correctly overruled defendant's demurrer to the evidence.

Defendant also assigns as error the refusal of requested instructions, and the giving of plaintiff's Instruction No. 1. Defendant's refused instructions were based on the independent contractor theory of defense and the contentions as to them are ruled by what we have said, in our ruling upon defendant's demurrer to the evidence. Defendant contends that plaintiff's Instruction No. 1 erroneously broadened the issues. Like contentions as to broadening issues were made concerning a similar instruction in the Bloecher case. It is here contended that this instruction is broader than the pleadings in that it permitted the jury to find that the safety relief valve "was installed in a place where it was likely to freeze and thereby become inoperative." The petition herein not only contained the allegaton set out in the Bloecher opinion but also alleged: "Defendant negligently and carelessly failed and omitted to have said heating system equipped with a suitable safety relief valve *properly placed and located* so as to properly relieve the pressure that he knew, or by the exercise of ordinary care could have known, was likely to be created in said system by the accumulation of excessive quantities of air and steam." We, therefore, hold that the instruction was not broader than the pleadings in this respect. Our ruling on the demurrer to the evidence disposes of defendants' further contention that this instruction was broader than the evidence "in that it permitted the jury to find (1) that the circulation of the water in the system was obstructed by an accumulation of air in the system; (2) that the safety relief valve froze; (3) that air and steam pressure thereof accumulalted in the system and exploded the.

boiler," because we held that there was substantial evidence on all of these questions.

Defendant further contends that this instruction assumes that the existence of certain facts hypothesized therein would be negligence on the part of defendant and assumes that the heating system was negligently constructed. This same contention was made and over-ruled in the Bloecher case and is likewise ruled against defendant here for the reasons there stated. The ending of the instruction ("and if you further find that the aforesaid acts of negligence, if you find such acts of negligence, directly caused said explosion and plaintiff's injuries, then your verdict must be for the plaintiff"), is also here criticized as assuming that all acts hypothesized were negligent. In view of the fact that, as pointed out in the Bloecher case opinion, the jury were specifically required to find the existence of each act or omission charged to be improper in the installation of the heating system, and were then required to find that each such act or omission was negligence, we cannot believe that the jury would be misled by this rather awkward way of stating that they must find that defendant's negligence, if any (in these specific separate acts and omissions, all were required to be found because joined in the conjunctive), directly caused the explosion.

Defendant further assigns error in the admission of evidence on behalf of plaintiff. Frank Carter was permitted to testify to measurements made some time after the explosion. The court struck out most of this testimony on defendant's request and instructed the jury to disregard it. Anyhow, it was merely cumulative evidence on the proposition that the high point of the system was in the bedroom. There was other substantial evidence of this condition and we cannot find that it was prejudicial or could have changed the result. The same thing is true of the measurements of the witness Fendler who took down the pipes from the Vitale rooms and reassembled them in the courtroom. If he had not first measured them it could have been charged that they were not correctly reassembled. Plaintiff's expert Geauque was allowed to state that the pipe above the heater was not a proper air vent; that lack of circulation would generate steam; and that the Mueller relief valve was not a proper valve for a steam system. Plaintiff's expert Gleser was permitted to say that it was not necessary to see an explosion to understand causes which might create it. We hold that these matters were sufficiently relevant to the issues involved that there was no prejudicial error in admitting opinions concerning them under the circumstances of this case. An expert witness, necessarily, states his conclusions about certain matters which would not be permitted of other witnesses. As long as his opinion is not a mere guess or conjecture but is based upon facts or adequate data it is properly received. "The

chief value of expert evidence lies in the fact that the witness possesses superior knowledge of the subject under consideration, and by reason of his study, training, and experience he is able to discern and trace the causal connection, if any, between successive events.'' [DeDonato v. Wells, 328 Mo. 448, 41 S. W. (2d) 184, 1. c. 187; see, also, Phares v. Century Electric Co., 336 Mo. 961, 82 S. W. (2d) 91; Kimmie v. Terminal Railroad Assn. of St. Louis, 334 Mo. 596, 66 S. W. (2d) 561; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950.] ''An event may be evidenced circumstantially by a cause or by an effect. [1 Wigmore on Evidence, 769, sec. 436; see, also, Wigmore's Principles of Judicial Proof, chap. XVII.]'' [McDonald v. Kansas City Gas Co., 332 Mo. 356, 59 S. W. (2d) 37.] From a careful consideration of the testimony of these experts and the whole record, our conclusion is that they were not allowed to enter into speculation and conjecture or immaterial issues and that the specific opinions complained of could not have misled or confused the jury.

■ Finally, defendant contends that the verdict of $30,000 is excessive. Plaintiff was unconscious for several days after the explosion. Plaintiff's right arm and both of her ankles were broken, and her skull was fractured. She sustained many very severe burns (first, second and third degree burns) on her arms, neck, shoulders and back, which required months of hospital treatment to heal. There was evidence that plaintiff would always suffer from headaches and dizzy spells as a result of her skull fracture; that she had a seventy-five per cent loss of flexion in the fingers of her right hand; that she was unable to turn her wrist because of the fracture of her right arm; that she has large scar areas from her burns which still cause pain; and that she suffered great pain and agony during the time she was in the hospital while the burns were healing. In addition to these injuries, a cancer developed in plaintiff's left breast which her medical testimony tended to show was the result of trauma and due to injuries received in the explosion. She has already had three operations to remove these cancerous growths which have finally removed the entire breast and even part of the pleura or inner lining of the chest. Her medical testimony is that more cancerous masses have developed which cannot be removed because they are too near her lung and that this will ultimately cause her death. Plaintiff was twenty-nine years old at the time she was injured and was a normal, healthy young woman. Under this evidence we cannot hold the verdict to be excessive.

The judgment is affirmed. *Ferguson* and *Bradley*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by Hyde, C., is adopted as the opinion of the court. All the judges concur.

## On Motion for Rehearing and Suggestions of Death.

HYDE, C.—On motion for rehearing, it is contended that a question decisive of the case, duly submitted by counsel has been overlooked by the court, namely: Plaintiff's theory was that there was an air pocket in the joint over the bedroom radiator (because it was the high point of the system and had no air vent); defendant says that if this was true, then the radiator in the shop could not have been warm, on the day of the explosion, according to plaintiff's experts, because there could be no circulation if there was' such an air pocket; but that plaintiff's evidence was that the radiator in the shop was warm; therefore, defendant claims that the water must have been circulating and that there could not have been an air pocket. In other words, defendant contends that plaintiff's experts did not base their opinions as to the cause of the explosion upon facts actually testified to by plaintiff's witnesses (that this radiator was warm), but, on the contrary, they based their opinions upon an assumed fact (that this radiator was cold) which, according to plaintiff's witnesses, was not true.

This proposition has not been overlooked but was considered in both of the opinions, handed down concurrently during this present term, in the two cases arising from the explosion in the Vitale apartment. [Bloecher case, 338 Mo. 535, 92 S. W. (2d) 681, and Vitale case, 338 Mo. 556, 92 S. W. (2d) 691.] In both opinions, it was noted that defendant contended that the testimony of Vitale and Carter had been so contradictory as to destroy its probative value. Both opinions recognized that there were to some extent inconsistent statements and contradictions, but held that these were such as to make the matter a question for the jury, and that there was sufficient other competent evidence in the record to make a jury case. One of the inconsistencies urged in both cases was this specific proposition now stated. The hypothetical question set out in the Bloecher case, however, contained the assumption "that the radiators furthest away, being that one in the shop, some 30 feet away from the Arcola, were warm." Therefore, it is evident that all opinions of plaintiff's experts as to the cause of the explosion were not based on the theory that the radiator in the shop was cold. Apparently alleged contradictory statements about this matter arise to some extent, because of differences in meaning of witnesses in the use of the term "warm." Perhaps the term "lukewarm" once used would better describe what the witnesses meant, and be more likely to reconcile their statements, because there was evidence that, even though there was an air pocket which would prevent normal circulation, there could be some reverse circulation through the return line which would cause at least part of the shop radiator to be warm; and that, even though hot water would not circulate through the

upper pipes, some steam could go through the air pocket which would warm the radiator to some extent. We, therefore, adhere to the conclusion, heretofore reached in four opinions in these two cases, that there was a case for the jury on plaintiff's theory of a steam explosion due to negligent installation of the heating system.

Defendant has also filed suggestions of death, supported by affidavit, stating that plaintiff died on November 23, 1935. Plaintiff obtained the judgment appealed from herein, in the Circuit Court of the City of St. Louis, on February 24, 1934. This court's opinion, affirming this judgment was handed down on November 12, 1935, during the present September (1935) term, at which the cause was argued and submitted. Defendant filed a motion for rehearing, on November 22, 1935, the day before plaintiff died. Defendant claims that the cause of plaintiff's death was cancer, which the evidence herein tended to show was caused by trauma and resulted from the injuries received in the explosion. Defendant contends that plaintiff died from the injuries for which she sued; that her cause of action therefore abated and died with her; and that this would be the result "if her death occurred at any time before final adjudication and settlement of the judgment." Defendant urges that a rehearing should be granted on this ground so that the matter of whether plaintiff died of the injuries sustained in the explosion, or from other causes, may be determined. [Citing Sec. 3280, R. S. 1929; Adelsberger v. Sheehy, 336 Mo. 497, 79 S. W. (2d) 109; Jordan v. St. Joseph Ry., L., H. & P. Co., 335 Mo. 319, 73 S. W. (2d) 205.] It is true, as defendant claims, that under these authorities, if before she obtained this judgment in the circuit court, plaintiff had died from the personal injuries received in the explosion, for which she brought this suit, then no action therefor would have survived her; and that the only cause of action anyone could have would be the new, separate and distinct cause of action created by our wrongful death statute. [See Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920, and cases cited.]

There is considerable difference, however, between the effect of death of a party before judgment and thereafter. Before the enactment of Section 3280, the death of a plaintiff did abate his cause of action for personal injuries, whether sued on or not, and there could be no revival. [Jordan v. St. Joseph Ry., L., H. & P. Co., supra; Heil v. Rule, 327 Mo. 84, 34 S. W. (2d) 90; State ex rel. Thomas v. Daues, 314 Mo. 13, 283 S. W. 51; Greer v. St. Louis, I. M. & S. Railroad Co., 173 Mo. App. 276, 158 S. W. 740.] But even before its enactment, if a plaintiff died after a judgment, his cause did not abate because the cause of action had become merged in the judgment. [Lewis, Admr. v. St.. L., I. M. & S. Railroad Co., 59 Mo. 495; Lewis v. McDaniel, 82 Mo. 577; Crawford v. C., R. I.

& P. Railroad Co., 171 Mo. 68, 66 S. W. 350; Behen v. St. Louis Transit Co., 186 Mo. 430, 85 S. W. 346; Siberell v. St. Louis-San Francisco Railroad Co., 320 Mo. 916, 9 S. W. (2d) 912.] A judgment is a debt, a property right which goes, upon the owner's death, to his personal representative regardless of what may have been the cause of action upon which it was obtained. [1 C. J. 169, secs. 288-289, p. 263, sec. 584; 1 R. C. L. 38, sec. 35; 52 L. R. A. (N. S.) 1217 note; 14 A. L. R. 694 note; 62 A. L. R. 1048 note; see, also, Lewis v. St. L., I. M. & S. Railroad Co., supra; Crawford v. C., R. I. & P. Railroad Co., supra; Millar v. St. Louis Transit Co., 216 Mo. 99, 115 S. W. 521.] It has been well stated that "after the giving of the judgment, the controversy is over the judgment, not over the original wrong." [Fowden v. Pacific Coast S. S. Co. (Cal.), 86 Pac. 178.] An appellate court does not try the cause of action but determines whether or not the trial court committed error when it tried the cause of action.

From the very first compilation of our statutes down to the present time, there have been provisions for final determination of appeals and writs of error pending, whether one or all parties died before hearing. [See Sec. 53, Chap. II, p. 635, R. S. 1825, and Secs. 1054-1057, R. S. 1929.] It may be noted that it is there said that "the appeal or writ of error shall not thereby abate," instead of "causes of action upon which suit has been or may hereafter be brought . . . shall not abate" as in Section 3280, Revised Statutes 1929, or "no action shall abate by the death . . . of a party," as in Section 891, Revised Statutes 1929. When a judgment is affirmed by an appellate court, the cause of action which became merged in it, when it was rendered, merely remains merged therein. When a judgment is reversed it ceases to exist and the merger is terminated because there remains nothing in which the cause of action could be merged. The reversal is really a determination that it was never properly merged because of prejudicial error in rendition of the judgment and, therefore, it reverts to its original status of merely a cause of action. [1 C. J. 171, sec. 292; 1 R. C. L. 39, sec. 35.] As provided in the statutes above quoted for revivor on appeal, if the sole party or all parties (either appellant or respondent) die after judgment and before submission of the case in the appellate court, there must be suggestions of death and substitution of heirs or personal representatives. This is not because such deaths affect the judgment, but it is because "where a party to an action dies after judgment, the authority of his attorney is terminated, and to prosecute an appeal, or otherwise act in the case so as to bind any one, he must obtain authority by employment by the deceased's personal representative;" and because "no judgment or other order affecting the merits can be entered,

before revivor, which would be binding upon those who are the successors in interest of the deceased party." [Carter v. Burns, 332 Mo. 1128, 61 S. W. (2d) 933.] If such party or parties die after submission of the appeal in this court, no revivor is necessary because all that the parties are required to do has been done under proper authority, and to protect all rights, "it is our rule that judgment will be entered as of the date of submission." [Batson v. Peters (Mo.), 89 S. W. (2d) 46, and cases cited; as to provisions usually controlling date of appellate court judgment see State ex rel. and to Use of Park National Bank v. Globe Indemnity Co. (Mo.), 62 S. W. (2d) 1065.] By entry before date of death, the judgment becomes binding upon all, who from or after the time of submission could claim under the deceased party. Our conclusion must be that, since plaintiff had recovered a judgment for her own injuries which had the status of a debt due to her from defendant, the death of plaintiff, after submission of defendant's appeal therefrom and after this court had handed down an opinion affirming that judgment, does not make necessary any revival, cannot in any way affect the judgment, and does not constitute grounds for granting a rehearing.

It is ordered that the final judgment of this court be entered as of the date of handing down the opinon herein and that the motion for rehearing be overruled. *Ferguson* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.