Marvin E. **OVERSTREET**, Plaintiff
(deceased), Zoleta Overstreet,
Respondent,

v.

Marvin E. **OVERSTREET, Jr.,** Appellant,

and

Betty Overstreet, Defendant.

No. 46494.

Supreme Court of Missouri,

Division No. 2.

Dec. 8, 1958.

Roy Hamlin, Hannibal, Harry J. Mitch ·
ell, Palmyra, for appellant.

Branham Rendlen, Charles E. Rendlen,
Jr., Rendlen & Rendlen, Hannibal, for re-
spondent.

EAGER, Judge.

In this suit, in two counts, Marvin E.
Overstreet sought to cancel a deed from
himself and his wife Zoleta to their son
Marvin E., Jr., and to quiet title as against
Marvin, Jr., and his wife Betty. To
simplify matters somewhat we will refer
to the parties as Marvin, Zoleta, Marvin,
Jr., and Betty. Marvin and Zoleta, in con-
templation of separation and divorce, en-
tered into a written property settlement by
which she was to receive certain personal
property; the real estate here in question,
a house and lot in Hannibal, was to "be
deeded" to Marvin for a further considera-
tion of $400 to be paid to her upon "de-
livery of a deed to him." On the same day

Marvin and Zoleta executed the controverted quitclaim deed to Marvin, Jr., their son (or in any event Marvin's son), allegedly as a mere conduit of title and upon his consent to reconvey. On the next day, July 28, 1949, Marvin filed a divorce suit against Zoleta, which was dismissed voluntarily on April 28, 1950. Following various alleged requests by Marvin for a reconveyance, the present suit was filed on April 12, 1950, seeking cancellation and a decree of title; the petition alleged fraud on the part of Marvin, Jr. in failing and refusing to reconvey, violation of the agreement, and a total lack of consideration. It seems to be conceded that Marvin, Jr., was then in the military service and so remained at all times pertinent here. The petition alleged that defendants had "absented themselves from their former or usual place of abode in this State * * *," and listed a Texas address. None of the proceedings for service by publication are shown, but the default decree recited that proof of publication was filed. On June 24, 1950, the court entered a default decree finding the facts essentially as already stated, cancelling the deed, and decreeing title in plaintiff Marvin. At some time in 1951, either in February or April, plaintiff Marvin died. The record fairly indicates that he died in February. On October 22, 1951, defendants Marvin, Jr. and Betty, appearing specially, filed a motion to set aside the default decree, alleging that Marvin, Jr. had at all times been in the military service, as plaintiff knew, that they had not been served with process, that defendants had not been represented, that no affidavit had been filed "relative to military service" and that the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.A. Appendix, § 501 et seq., had not been complied with; also, that defendants had been greatly prejudiced, that they had a "meritorious and complete legal defense," and that plaintiff's allegations of title were not true. On January 7, 1952, the court, having heard that motion "by agreement," found that the notice sent by mail "was

unclaimed," that there was no nonmilitary affidavit and no attorney appointed, and that the allegations of defendants' motion were true; it then set aside the default "decree," restoring the case to the trial docket. Thereupon "defendant" entered voluntary appearance and "*are* granted leave to plead" within thirty days. On February 16, 1952, defendants suggested the death of the plaintiff (this being the first such action by anyone), and asked that they be not required to plead "until and unless the cause * * * is revised * * *." The court thereupon made an order that: "Defendants shall not be required (here an omission appears) unless cause is revised." On April 11, 1952, Zoleta, as the widow of Marvin, moved that she be substituted as plaintiff, alleging that she had an interest in his "estate," and asking that she be permitted to protect such interest as would "devolve upon her" at her husband's death. The transcript recites that this motion was sustained on September 5, 1953, but no order of substitution is shown.

Nothing further appears to have been done until December 11, 1956, when the cause was set for "disposition." At that time counsel asked leave to file a motion to dismiss on behalf of both defendants. Such leave was granted. The motion (on special appearance) attacked the validity of the substitution of Zoleta as plaintiff, alleging that Marvin died in April, 1951, that Zoleta had no "right, title or interest" in the real estate in that she had been paid by Marvin the sum of $400 for all her interest and in full settlement and satisfaction therefor, and that both had then conveyed to Marvin, Jr.; that, therefore, she was not a proper party plaintiff. The court permitted counsel for defendants to put on evidence in support of the motion. In substance, this consisted of the following: the petition, the separation agreement, the quitclaim deed to Marvin, Jr., the court files, and the probate files. The probate inventory showed only a few hundred dollars in assets in addition to the real estate here involved, and the application for

letters listed Zoleta, the widow, and three sons of Marvin as the heirs. The court files in the divorce case were also offered. After much argument and colloquy, pro and con, the court overruled the motion to dismiss; thereupon counsel for plaintiff moved orally for a "summary judgment on the pleadings" for failure to answer and on the ground that defendants had been in default for approximately three years. Counsel for defendants called attention to the order providing that they should not be required to plead "until and unless the cause * * * is revised as provided by law" (February, 1952) and asked leave to file an answer, repeating the request at least twice. The court, after repeated objections to the granting of further time, announced that defendant had not complied with the orders of the court and that the "motion" should be sustained. It entered a decree for plaintiff as of that date. In substance it found: the rendition of the prior decree and the proceedings thereafter; the filing, hearing and ruling upon the motion to dismiss and the sustaining of plaintiff's motion for a "judgment upon the pleadings"; it further found that it had had jurisdiction of the parties from the entry of the general appearance, found the death and substitution, and, finding further that the original entry of the default decree against both defendants on June 24, 1950, was proper, it reinstated and confirmed that decree as of its original date. It further found fee simple title in Marvin as of the time of filing suit and at the time of his death. Motion for new trial was duly filed and overruled by the lapse of 90 days. Appeal was taken to the St. Louis Court of Appeals, but the cause was transferred here of that court's own motion as one directly involving title to real estate. We shall sometimes refer to the trial court's "decrees" as judgments.

We are confronted with sundry contentions, pro and con, asserting: the propriety and the impropriety of the court's action in overruling the motion to dismiss and in refusing the defendants leave to file answer; the validity and the invalidity of the procedure for revival and substitution, both as to time and parties, and of the ensuing judgment (of December 11, 1956) based thereon; the error in and the correctness of the court's action in attempting to reinstate the original default judgment; the validity and the invalidity of that initial judgment; and also, the impropriety of the court's action in setting aside the original default judgment. The difficulty here has lain primarily in determining which of the loose ends we should grasp in order to unwind this tangled skein. We find that we must reach back almost to the point where the contest began.

We thus consider the motion of defendants to set aside the original default judgment of June 24, 1950, and the order made thereon. Marvin died not later than April, 1951, and probably in February, 1951. There was no judgment-plaintiff or substituted plaintiff in court or in the cause when the motion was filed on October 22, 1951, or when the order was made setting aside that judgment on January 7, 1952. The authority of counsel to represent Marvin, the original plaintiff, ended with his death (Prior v. Kiso, 96 Mo. 303, 9 S.W. 898; Carter v. Burns, 332 Mo. 1128, 1138, 61 S.W.2d 933), and no attempt had been made to substitute his heirs. It is useless to argue who may have had the "burden" to procure substitution. There was no substitution, and in this state of the record the order setting aside the default judgment was a nullity. The property rights in a personal judgment survive to the personal representative and those in a judgment affecting real estate survive to the heirs or devisees. Section 511.540, V.A.M.S.; Vitale v. Duerbeck, 338 Mo. 556, 92 S.W.2d 691, 696–697; Wormington v. City of Monett, Banc, 356 Mo. 875, 204 S.W.2d 264, 267; Rule 3.08(a), 42 V.A. M.S. The situation here is somewhat analogous to that in Hoppe, Inc. v. St. Louis Public Service Co., Mo., 235 S.W.2d

347, although there the inherent invalidity lay in the lack of notice before setting aside a judgment. In our case no one could legally have had notice or an opportunity to be heard, for there was no plaintiff. It is not necessary to effect a substitution in order to make a judgment survive (Rule 3.08(a), last sentence), but it is necessary to substitute the proper party or parties for the deceased judgment creditor in order to attack the judgment. In the case of Carter v. Burns, 332 Mo. 1128, 61 S.W. 2d 933, where defendant died pending appeal, the court said, loc. cit. 938: "Of course, no judgment or other order affecting the merits can be entered, before revivor, which would be binding upon those who are the successors in interest of the deceased party. Childers v. Goza, 1 Mo. 394; Murphy v. Redmond, 46 Mo. 317; Gamble v. Daugherty, 71 Mo. 599; Rogers v. Tucker, 94 Mo. 346, 7 S.W. 414; Wilson v. Darrow, 223 Mo. 520, 122 S.W. 1077; Cole v. Parker-Washington Co., 276 Mo. 220, 207 S.W. 749, 766; 1 C.J. 21, § 440; 1 R.C.L. 22, § 14. * * *" That case was decided under the statute as it existed prior to 1943, but the principle is applicable. In the case of Gambell v. Irvine, Mo.App., 102 S.W.2d 784, an appeal by defendants was dismissed and the cause remanded in order to permit the trial court to substitute the administratrix of a deceased plaintiff and then to rule upon a motion for new trial which had been filed during plaintiff's lifetime, but erroneously overruled after her death. If a judgment in favor of a deceased plaintiff is to be attacked by appeal, a substitution is necessary. Rule 3.08; Wormington v. City of Monett, Banc, 356 Mo. 875, 204 S.W.2d 264; Lyon v. Lyon, 223 Mo.App. 452, 12 S.W.2d 768. The withdrawal of a motion for new trial after the death of the movant has been said to be a nullity. Matlick v. Matlick, 212 Mo.App. 83, 251 S.W. 462. In the case of Bank of Skidmore v. Bartram, Mo.App., 142 S.W.2d 657, where a defendant had died after default judgment, the court said, loc. cit. 659: "The default judgment being a final judg-

ment and having been rendered during the life of John A. Ripley terminated the litigation. There was no longer a cause of action pending. Section 1070, R.S.Mo.1929, Mo.St.Ann. § 1070, p. 1370, [V.A.M.S. § 511.020]; Kansas City v. Woerishoeffer, 249 Mo. 1, loc. cit. 26, 155 S.W. 779." Our courts have held that a judgment rendered against one after his death is a nullity, though process had been duly served. Murphy v. Redmond, 46 Mo. 317; Cole v. Parker-Washington Co., Banc, 276 Mo. 220, 207 S.W. 749. It would likewise seem that an order taking away (after death) a judgment rendered in one's favor during his lifetime, without substitution of parties, is void. We so hold.

■ Having determined that the original default judgment was improperly set aside, the subsequent revival proceedings require little discussion. If no cause of action was pending at the time of Marvin's death because it had been merged in the judgment, then there was nothing to revive, for there had been no abatement. Vitale v. Duerbeck, 338 Mo. 556, 92 S.W.2d 691, 696-697; Madden v. Fitzsimmons, 235 Mo.App. 1074, 150 S.W.2d 761, 767; Gambell v. Irvine, Mo.App., 102 S.W.2d 784; Bank of Skidmore v. Bartram, Mo.App., 142 S.W.2d 657; Siberell v. St. Louis-San Francisco R. Co., 320 Mo. 916, 9 S.W.2d 912, 918; Lyon v. Lyon, 223 Mo.App. 452, 12 S.W.2d 768; Wormington v. City of Monett, Banc, 356 Mo. 875, 204 S.W.2d 264. In this situation the apparently serious questions here concerning the timeliness of the revival, the presence or absence of proper and necessary parties thereto, and the possibility of a waiver, become wholly immaterial.

By the same token, since the cause had previously been reduced to judgment, the orders and judgment of December 11, 1956, were a nullity; this, for the very simple reason that there was then no cause of action remaining before the court.

The judgment of December 11, 1956, designated in the record as a "Decree" will be

reversed. Although, as we have stated, the original cause of action was merged in the judgment of June 24, 1950, we feel that the interests of justice will be better served by remanding the case in order to permit a determination (if the parties so desire) as to whether that judgment is now subject to attack, under The Soldiers' and Sailors' Civil Relief Act (U.S.C.A. Title 50, App. § 520, par. (4), or otherwise. The judgment and decree of December 11, 1956, is reversed and the cause remanded. It is so ordered.

All concur.