**Earl N. BOUTELL, Respondent,**

v.

**SCOTT'S ROYAL TIRE CO., Inc., Appellant.**

No. 23746.

Kansas City Court of Appeal.

Missouri.

Feb. 4, 1963.

William J. Peters, Fred J. Freel, Sheridan, Baty, Markey, Sanders, Edwards & Carr, Kansas City, for appellant.

Donald W. Giffin, David Q. Reed, Spencer, Fane, Britt & Browne, Kansas City, for respondent.

MAUGHMER, Commissioner.

This is a suit for damages arising out of alleged negligence and poor workmanship in the repair of an automobile.

On February 10, 1959, Earl N. Boutell, took his 1955 Chrysler Sedan, which was then three and one-half years old and had been driven about 25,000 miles, to defendant Scott's Royal Tire Co., Inc., Kansas City, Missouri, with instructions to realign the front wheels, the front end, and rotate three of the tires. It is conceded that defendant's employees did all of these things and that plaintiff paid for it.

Plaintiff testified that he thereafter took the automobile to his farm home near West Line, Missouri, and about 60 miles from Kansas City. He said they used a station wagon at the farm and except for a few trips to Kansas City, the Chrysler was used very little during the next 52 days. On April 3, 1959, plaintiff, being about to go on a trip to New Britain, Connecticut, decided to equip it with two new tires. He again took it to defendant's place of business, purchased two new tires and defendant installed them on the front wheels. Mr. Boutell stated that he was not a mechanic and that neither he nor any one else, except defendant, had "worked on" the car since April 3rd.

On April 20, 1959, plaintiff, driving the Chrysler, started for New Britain by way of St. Louis. He had proceeded about 60 miles to near Carrollton in a hard rain storm when the accident occurred. As

plaintiff described it, he was going about 60 miles per hour when "a tire blew out and I ended up in the ditch", "after the blowout it turned to my right, the right front wheel, there's a concrete curb", "I'd say a foot high—I hit that center and ended up off the road". Mr. Boutell stated that the Chrysler was equipped with power steering and he had noticed "nothing unusual" in the operation of the vehicle—steering or otherwise—prior to the accident. He said he had not noticed any excessive wear on the front tires, either on the new ones or the old ones. Plaintiff said it took two weeks to repair the car and "by hitting this culvert I tore all the underneath structure out of it". Speaking of the front tires after the accident, he said: "When I saw them here in Kansas City they were just shreds, both tires, both front tires were just shreds, no rubber on them at all".

The wrecked automobile was taken to the shop of Allied Motors, Kansas City, Missouri, for repairs. Mr. Paul J. Christman, Jr., manager of Allied Motors body repair department, testified. He described his occupation as a "Metal finisher, body man, painter". He said he had also worked as a body and fender man and had been manager of six different shops in Kansas City. He examined the Chrysler after the accident and described its condition as follows: "The undercarriage or running gear of the car was tore loose from the frame, the frame was bent and distorted, threw the cowl back, the windshield was broken, part of a sign laying in the car where it had gone through the window, the hood was distorted, motor mounts were broken, radiator, of course, was collapsed, the air conditioning, we had to work on it, the right front fender was badly damaged and the left front fender was, of course, out of shape. Everything on the front end was demolished". Testifying specifically as to the condition of the front tires, Mr. Christman said: "Well, the tread was showing, the rubber leaving the casing, it looked like a rag. One tire (right) was completely collapsed".

This witness said he was familiar with the customs, practices and procedure of the industry in the process of aligning the front wheels and front end of an automobile. He said that first the wheels are adjusted both forward and backward and in and out. The vehicle is put on a machine which automatically lines the front wheels with the rear—"so they will track". Once the "setting" is made "the wheels are locked into position on the tie-rod" and "you lock it in position by torqueing your nuts down". This locking "tube is adjustable through a worm type tube, it is threaded on both sides". "You have squeeze clamps on the end." Mr. Christman said he examined the tie-rod and squeeze clamps after the accident and found "the locking device on this tie-rod was loose", "the nut was ready to come off. You could just turn it with your fingers". He was then asked to keep in mind the condition of the car as he had found and described it, and to assume further that 17 days after new tires had been installed on the front wheels, the right front tire blew out while driving about 60 miles per hour, and then express his opinion as to the cause of the blowout and accident. His opinion was that the blowout caused the accident and the blowout was caused by "the tie-rod being loose and causing excessive wear. There was a malfunctioning there of the front end alignment". He stated that if the squeeze clamp nuts were properly tightened it was improbable that they would work loose, but if they were only partially tightened, they were likely to work loose. He said further that power steering lessened the likelihood of the driver noticing defective steering.

The only other witness called by plaintiff gave testimony concerning the rental costs of automobiles. The defendant called just one witness, its manager, Harry D. Schmidt, who inspected the Chrysler after the accident. He said both front tires were "worn completely smooth".

This cause was submitted to the jury and it returned a verdict for plaintiff in the sum of $1125. The court reduced the ver-

dict to $1099.68, the amount prayed for in plaintiff's petition, and entered judgment for that amount. Thereafter the trial court sustained defendant's motion for new trial based upon error as to Instruction 2 on measure of damages, and ordered a new trial on the issue of damages only. Neither party has appealed from that particular ruling of the trial court. Therefore, even if the judgment as entered is affirmed, the damage issue will have to be retried.

■ On its appeal defendant assigns error in the giving of plaintiff's main instruction numbered One. Three complaints are leveled at the instruction. Defendant says it authorized a plaintiff verdict when there was no substantial evidence to support plaintiff's theory of negligence and causation. This feature will be considered in reviewing the denial of defendant's motion for a directed verdict. Defendant asserts further that the instruction did not require the jury to "find facts constituting negligence" nor "the finding of proximate cause." We believe the instruction is not reversibly erroneous. It required these findings as prerequisites to a plaintiff's recovery: Ownership of the car by plaintiff, alignment of the front wheels and front end by defendant company, failure to tighten and secure the tie-rod bolts, finding that such failure was contrary to custom, was negligent and not in the exercise of reasonable care, and that it was the direct and proximate cause of the blowout and accident. Although the instruction is not sprinkled with the phrases "if so", "if you so find", and "if you further find and believe" (and defendant complains about this) we think it is not misleading and rule the point against defendant. Kelly v. Kansas City, Mo., 335 S.W.2d 159, 163.

■ We now consider defendant's other assignment, namely, that the court should have sustained its motion for a directed verdict. Since defendant put on evidence after plaintiff had concluded, we consider only the motion as submitted at the close of all of the evidence. Did plaintiff submit substantial evidence that defendant negligently aligned the Chrysler's front wheels, and substantial evidence that such negligence, if any, caused the accident?

The submissibility of plaintiff's case depends primarily upon testimony of his expert, Mr. Christman. Defendant asserts he did not qualify as an expert, that the question was not one for expert opinion, and that because of the time lag between the alignment and accident, plus the fact that the witness only saw the car after the accident, the taking of his opinion on the vital issue was a resort to speculation and surmise.

We think Mr. Christman qualified as an expert in the field and the court did not abuse its discretion in so holding. The broad rules covering the field of expert testimony was set forth in Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844, 848–849. We quote from the opinion:

> "It is well to note, however, that an expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions. 20 Am. Jur., Sec. 783, p. 656. Because of his special knowledge an opinion by an expert witness, 'when not a mere guess or conjecture but an inference drawn by one of requisite experimental capacity from adequate data, is evidence' and such testimony is evaluated and measured by the same standards as so-called fact testimony. Scanlon v. Kansas City, 325 Mo. 125, 150, 28 S.W.2d 84, 95. It must be emphasized that the expert's opinion must not be a mere guess or conjecture but must be based upon facts and adequate data, Vitale v. Duerbeck, 338 Mo. 556, 567, 92 S.W. 2d 691, 695; Cardinale v. Kemp, 309 Mo. 241, 274 S.W. 437, and his 'positive opinion must have to support it reasons and testimony which will give it suffi-

cient probative force to be substantial evidence.' Kimmie v. Terminal R. Ass'n, 334 Mo. 596, 605, 66 S.W.2d 561, 565. The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force and 'The question whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law for this court.' Hall v. Mercantile Trust Co., 332 Mo. 802, 820, 59 S.W.2d 664, 672; Ambruster v. Levitt Realty & Inv. Co., 341 Mo. 364, 374, 107 S.W.2d 74".

Appellant invites our attention to Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., Mo.App., 317 S.W.2d 841. It is true that the Westfall case is much stronger on the facts. Within a few minutes and a few miles after defendant's repair, the tractor tie-rod was observed dragging on the pavement, whereas 70 days elapsed in our case between the repair and the accident. However, in each case expert evidence as to the cause of the accident was received and the physical condition of parts of the vehicle which could have caused the accident as they were observed after the accident, was held to afford a proper foundation to justify the taking of the expert opinion.

In Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615, 620, the trial court took an expert opinion that the cause of the gas explosion was a faulty regulator and the jury gave plaintiff a verdict. The Supreme Court reversed and said:

"We have an odd situation in this case. Plaintiff's evidence when considered in its entirety points unmistakably to a faulty Unitrol as being the cause of the injury for which he asks damages. The defendant Skelly Oil Company is admittedly not liable on that theory. To arrive at the conclusion that a faulty regulator for which defendant would be liable was the cause, we must speculate and draw inferences inconsistent with the facts proven by plaintiff and make surmises that are not reasonable. In such a situation a plaintiff may not recover."

The "odd situation" as described by the court in the Waldron case does not exist in our case where no suggestion is made and no evidence is offered as to the cause of the accident except the theory of plaintiff.

Some of the facts and data upon which the expert opinion was received and plaintiff's theory of negligence is predicated, are affirmatively admitted and some are not disputed. Defendant's only witness, its manager, Harry D. Schmidt, testified as to the realignment, installation of the new tires and that after the accident the two new tires were worn down to the cord. There was no evidence disputing plaintiff's evidence that after the accident the squeeze clamp and nuts holding the tie-rod were loose, and no evidence, opinion or otherwise, denying the expressed opinion of Mr. Christman, that such conditions would quickly cause the tires to wear down and likely lead to a blowout. While the question may be close, we believe, viewing the case as a whole, that plaintiff presented substantial credible evidence, was entitled to a submission to the jury and therefore the motion for directed verdict was properly overruled.

No additional or further assignment of error having been made, the judgment is affirmed. However, in accordance with the trial court's order for new trial on the issue of damages alone and from which order no appeal was taken, the cause is remanded for a new trial upon that issue alone.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.