**John R. DOLAN, Plaintiff-Respondent,**

**v.**

**D. A. LUBRICANT CO., a Corporation, and
Kent B. Thomas, Defendants-Appellants.**

No. 24609.

Kansas City Court of Appeals.

Missouri.

April 3, 1967.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 5, 1967.

Application to Transfer Denied
July 10, 1967.

Tweedie Fisher, Jefferson City, for appellants.

Kelso Journey, Clinton, for respondent.

MAUGHMER, Commissioner.

This is a suit to collect damages for personal injuries allegedly sustained by plaintiff, John R. Dolan, when the Triumph automobile he was driving was struck from the rear by a Ford operated by the defendant, Kent B. Thomas. It was conceded that the Ford automobile was owned by the defendant, D. A. Lubricant Company, and that Mr. Thomas was working for that company at the time of the accident. The verdict and judgment were for plaintiff and assessed his damages at $15,000. Both defendants have appealed.

The accident occurred about 7:30 p. m. July 24, 1962 on Broadway Avenue in Sedalia, Missouri. Broadway Avenue at the time was a part of Highway 50 with four traffic lanes, two running east and two west. The street was well lighted, the weather fair, the pavement dry and there was an eight foot parkway on either side. Plaintiff was driving his vehicle eastward and his wife was sitting in the right front seat, when they were struck by the Ford. Both vehicles were in the outside lane. The defendant Thomas said he was putting a receipt on the sun visor—momentarily took his eyes off the street and did not see plaintiff's car in time to stop. After the collision, the Triumph came to rest 150 to 168 feet (estimates of plaintiff and his wife) from the place of impact.

Mrs. Dolan estimated their speed to be about 20 miles per hour. Plaintiff testified that his car's "bumper guards had been driven into the body of the car and the doors were sprung so you couldn't get them shut after they had been forced open. Just looked like the back end had been pushed towards the middle".

On appeal defendants do not assert any error touching liability, the instructions or the amount allowed. They present two as-signments of error. They say first, that the court erred in permitting respondent's witness, Dr. E. L. Rhoades, over objection, to answer a hypothetical question which assumed "that respondent's head was thrown over the back of the front seat" because such assumption "assumed a fact that was not in evidence". They contend second, that the court erred "in allowing Dr. Rhoades to testify that in his opinion arthritis found in the plaintiff's neck was caused by the collision, over the objection of defendants that Dr. Rhoades did not know the onset of the arthritis". The defendants make no additional or other assignments of error. We shall, therefore, in summarizing the evidence, include only those portions which we believe pertain to these two points. The defendant, Kent B. Thomas, driver of the Ford, did not testify.

Does the evidence fairly establish or reasonably tend to establish that "plaintiff's head was thrown over the back of the front seat" so as to justify inclusion of such an assumption in plaintiff's hypothetical question? Plaintiff stated that his 1959 Triumph was equipped with two buckets seats in front and that this bucket seat or the back of the seat "reached up to about my shoulder blades"; that after the collision, "I was shook back against the seat and then pitched forward against the steering wheel and the windshield". He said the vehicle was struck with such force as to "spring the doors" and drive the bumper guards into the car. Plaintiff was removed on a stretcher from the scene to an ambulance which had been called and by it taken to a hospital for emergency treatment. The following is a question which was put to Dr. Frank R. Williams (the only witness who testified for defendants), together with his answer:

"Q. When a man is seated in a car and struck from behind by considerable force, which causes considerable damage to the car, it's the neck that takes the weight of the head back, above the height of the seat? It's the free agent, in other words; it remains and the body moves forward?

"A. Right. Actually, the body moves forward and it first gives you this and then this (indicating), and since you do not have any support—and this is getting back to the Air Force. That's the reason they put head rests behind pilot seats, you go further than you normally move".

■ The hypothetical question as actually put to Dr. Rhoades was not quite "that respondent's head was thrown over the back of the front seat" as defendants say, but rather, "His body first went in a backward direction; his head back over the seat in which he was riding and forward into the dash and steering wheel". However, we do not see any material difference. It is true that plaintiff did not squarely and specifically testify either that his "head was thrown over the back of the front seat" or "back over the seat in which he was riding." Nevertheless for the purpose of a hypothetical question, we believe that such an assumption was justified under the evidence and physical facts. In Heppner v. Atchison, Topeka & Santa Fe Ry. Co., 297 S.W.2d 497, 506, our supreme court said:

"As to the other facts hypothesized we may say that it is not necessary that they be proved by the direct testimony of any eyewitness. Facts may be included of which there is substantial circumstantial evidence. Pettis v. St. Louis Public Service Co., Mo.Sup., 240 S.W.2d 909. In the instant case there was evidence that trainmen customarily rode with their backs toward the rear window of the cupola; that the caboose gave an unusual forward lurch which would tend to throw a person toward the rear;".

We also quote briefly from Dillard v. East St. Louis Ry. Co., Mo.App., 150 S.W.2d 552, 556:

"It is not essential that a hypothetical question include all the facts the evidence tends to prove. It is sufficient if the question fairly states such facts as the proof of the examiner fairly tends to establish, and fairly presents his claim or theory".

■ Appellants contend and cite authorities to the effect that "a hypothetical question should be predicated upon the evidence". We subscribe fully to this principle but in our opinion the phrase objected to is predicated upon the evidence. We rule this first assignment to be without merit.

Appellants' second assignment requires examination of the testimony of Dr. E. L. Rhoades, a general practitioner, who examined, treated and took x-rays of plaintiff in March, 1963 (almost eight months after the accident) and again on March 21, 1966. It is not necessary, we believe, to detail fully his findings and prescribed treatment. It is sufficient to say that he found "lipping or narrowing of the interspaces of cervical 6 and 7 and dorsal 1 vertebrae". He found limitation of motion in the neck and back. The condition had worsened at the time of his second x-rays. His diagnosis was traumatic arthritis. He was not able to declare, based solely upon his examinations, x-rays and objective findings, just when the calcification or arthritis began or had its inception, and he so stated.

Next the hypothetical question put to the doctor by plaintiff's counsel. This question assumed that at the time of the accident plaintiff was 42 years of age; had been in good health throughout his life, had never suffered an accident, or serious illness or been in a hospital as a patient; that at the time and for years before he had been engaged in the work of obtaining right-of-way easements and negotiating with landowners for rights to construct missile sites and pipelines; that this work required him to walk over hills, across ordinary land obstructions and drive a car regularly over an area of a 50 mile radius from Sedalia, Missouri; that he had performed and was performing this work regularly six days per week and eight hours per day and had never had any difficulty with his health; that he participated in fishing and hunting and sports which required physical

endeavor, and coached a Little League Baseball team. The question then described the bucket seats and the striking from the rear. The plaintiff had presented evidence as to all of these facts and defendants do not contend otherwise. Defendants did not at the time and do not now suggest any material fact that was lacking in the hypothetical question. Next came the disputed assumption, namely, that "his body first went in a backward direction, his head back over the seat in which he was riding and forward into the dash and the steering wheel where his chest hit the steering wheel and his head hit the forward part of the car". We now set out in full the concluding part— actually the question itself and the answer:

"Q. Assuming those facts to be true, doctor, can you tell the jury whether or not you have an opinion, based upon reasonable medical certainty, as to whether or not that collision, the violence that Mr. Dolan was subjected to, did cause the conditions that you found in Mr. Dolan's neck and you have described to the jury in your testimony? A. I have an opinion.

"Q. What is that opinion?

"A. That the present condition of Mr. Dolan could have resulted with reasonable medical certainty from such a collision".

Defendants' objection was that "this doctor testified he didn't know how long this arthritic condition had existed, and since he did not know how long this arthritic condition existed, he obviously couldn't answer any question, if the Court please, as to whether or not this arthritic condition was as a direct result of this automobile collision". The court permitted the answer and stated that it would go to the weight the jury would give to his testimony.

There were no x-rays in evidence or, so far as the testimony is concerned, in existence, that were taken just prior to the accident. Manifestly, a doctor cannot state definitely, of his own knowledge, from x-rays taken months or years after such an occurrence the exact date upon which the arthritis found began or had its onset. If he could, there would be little need for a hypothetical question. However, it does not follow that a medical expert cannot formulate and express an opinion, if he has one, based upon additional circumstances or assumptions which were revealed or shown by other testimony or other evidence. In such a situation the medical expert may express his opinion that the injury was incurred or, as he stated in the case before us, "could have resulted with reasonable medical certainty from such a collision". It is a very common practice to ask and to allow a medical expert in damage suits to testify both from his personal knowledge and hypothetically, based upon evidence produced from others by the inquirer. The law on this proposition was generally stated by our supreme court in the recent case of Harp v. Illinois Central Railroad Co., Mo.Sup., 370 S.W.2d 387, 391. We quote therefrom:

"As an exception to the general rule that a witness may not express an opinion, an expert witness may do so when qualified as such and when the subject matter is not of such common knowledge to invade the province of the jury. Schears v. Missouri Pacific Railroad Company, Mo., 355 S.W.2d 314, 321; Christian v. Jeter, Mo., 287 S.W.2d 768. There is no question but that proper opinion testimony as to causal connection is competent and can constitute substantial evidence. Dorsey v. Muilenburg, Mo., 345 S.W.2d 134, 138; Schaefer v. Rechter, Mo., 290 S.W.2d 118; Ketcham v. Thomas, Mo., 283 S.W.2d 642; Waterous v. Columbian Nat. Life Ins. Co., 353 Mo. 1093, 186 S.W.2d 456, 459; Glowczwski v. Foster, Mo.App., 359 S.W.2d 406. However, the expert's opinion must not be a mere guess or conjecture but must be based upon facts and adequate data, and the opinion must have in support of it reasons and facts supported by com-

**44**

petent evidence which will give the opinion sufficient probative force to be substantial evidence. Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844; Schaefer v. Rechter, supra; Kimmie v. Terminal R. R. Ass'n, 334 Mo. 596, 66 S.W.2d 561."

The same court in Giambelluca v. Missouri Pacific R. R. Co., Mo., 320 S.W.2d 457, 463, declared the same principle. Again we quote:

"An expert witness is one who by reason of education or specialized experience possesses superior knowledge respecting a subject about which persons having no particular training are incapable of forming an accurate opinion or of deducing correct conclusions. However, the expert's opinion, which the jury may accept, must not be a mere guess—it must be based upon facts and adequate data. Vitale v. Duerbeck, 338 Mo. 556, 92 S.W.2d 691; Waldron v. Skelly Oil Co., 363 Mo. 1146, 257 S.W.2d 615; Gaddy v. Skelly Oil Co., 364 Mo. 143, 259 S.W.2d 844. His 'positive opinion must have to support it reasons and testimony which will give it sufficient probative force to be substantial evidence.' Kimmie v. Terminal R. Ass'n of St. Louis, 334 Mo. 596, 66 S.W.2d 561, 565. The facts upon which an expert's opinion is based, like the facts sufficient to support a verdict, must measure up to the legal requirements of substantiality and probative force and, upon appeal, the 'question whether such opinion is based on and supported by sufficient facts or evidence to sustain the same is a question of law' for the appellate court".

■ It is our opinion that the hypothetical question propounded to Dr. Rhoades and his answer fall within the limitations prescribed by the supreme court in the two cases just referred to. We believe the assumptions in the hypothetical question were based upon evidentiary facts and testimony adduced by plaintiff, who had the right to incorporate the same in the question. It

is our belief further that the doctor's opinion meets the legal requirement of substantiality and probative force. The court did not err in permitting the answer. We rule this second point against appellants.

No other assignments of error having been presented, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court

All concur.