Charles E. DeMOULIN and Diane M. DeMoulin, Plaintiffs-Respondents,

v.

Norman Lee KISSIR, Defendant-Appellant.

No. 33345.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

Weiss & Goffstein, Jerome S. Kraus, St. Louis, for appellant.

Gerritzen & Gerritzen, St. Louis, for respondent.

CLEMENS, Commissioner.

The primary issue here arises from the trial court's refusal to give defendant's withdrawal instruction. The instruction would have directed the jury to disregard evidence of a doctor's bill for treating the plaintiff-wife's dislocated jaw, one of her alleged injuries. This, on the ground that plaintiffs had failed to show a causal connection between the accidental injury and the dislocation. Lesser issues concern the sufficiency of evidence to show loss of consortium, and the propriety of a hypothetical question.

The defendant negligently drove his car into the rear of plaintiffs' car. Plaintiffs sued and got verdicts on three counts. By Count I plaintiff Charles DeMoulin sued for his own personal injuries and car damage and got an $850 verdict. The defendant does not appeal from that part of the judgment. By Count II plaintiff Diane DeMoulin sued for her personal injuries and got a $5,000 verdict. By Count III the plaintiff husband sued for loss of his wife's

services and for medical expenses and got a $3,000 verdict. The defendant appeals from the judgment entered on Counts II and III.

By defendant's first point he claims error in the refusal of his rather poorly worded withdrawal instruction: "The evidence fact of Dr. Hempstead's bill for post and future dental services to Diane M. DeMoulin is withdrawn from the case and you are not to consider such evidence in arriving at your verdict." Dr. Edward J. Hempstead, a dental surgeon, had testified hypothetically that a collision such as the one here could cause a passenger to suffer a dislocated jaw; that the reasonable value of his past services was $250 and, over defendant's objection of no causation, that future treatment would cost $1,800 to $2,000. By his withdrawal instruction defendant sought to eliminate this testimony about Dr. Hempstead's fees. The issue requires us to relate the evidence about the collision and Mrs. DeMoulin's dislocated jaw.

On February 15, 1966 Mrs. DeMoulin was a front seat passenger in her husband's car. While waiting for a stop light to change the defendant rear-ended their car. The impact drove Mrs. DeMoulin violently backward and then forward. Perhaps because of her seat belt she did not strike any hard interior surface. Next day she went to her family physician complaining of back and shoulder pains. About six weeks after the collision, for the first time in her life, Mrs. DeMoulin began to have headaches and pains in her neck. Her doctor prescribed a Thomas collar and treated her conservatively every few weeks for eight months. When her symptoms continued he referred her to an orthopedist, who prescribed exercise and traction. The orthopedist gave a diagnosis of a strained neck and back, caused by the collision. These injuries present no issue on this appeal; our concern here is the causal connection between the collision and the dislocation of Mrs. DeMoulin's jaw.

About four weeks after the collision Mrs. DeMoulin had the first jaw trouble. She said: "Well, we were at a friend's house and this one person was telling a joke. I laughed and I guess I opened my mouth too wide and I couldn't close it." Mrs. DeMoulin could not recall the dates, but four or five times after that her jaw locked when she yawned. When deposed nine months after the collision Mrs. DeMoulin listed her complaints as pain in the lower back and both sides of her neck; when examined by defendant's doctor a month later she gave a history of low back pain and intermittent headaches. Neither time did she mention her jaw.

In July, 1967 seventeen months after the collision Mrs. DeMoulin went to Dr. Emile D. Lambrechts for treatment of a broken tooth. He found the upper left jaw bone "had what we considered a subluxation * * * A sort of dislocation, or I would say, an extra movement." He said a dislocation could be painless and a person might have it for years without being aware of it. Dr. Lambrechts said the condition could be caused by trauma, by loss or wearing down of teeth, or by an "excessive yawn." Two months later Mrs. DeMoulin went to Dr. Edward J. Hempstead, a dentist specializing in disfunctions of jaw bone (mandibular) joints.

Mrs. DeMoulin complained to Dr. Hempstead that during the past year and a half her jaw had locked four or five times, that she had popping noises when she opened her mouth wide and had had headaches. Dr. Hempstead's examination included x-rays and wax impressions. He found a deviation in jaw motion and that Mrs. DeMoulin could not open or close her mouth freely without discomfort. The diagnosis was "temporomandibular joint disfunction with typical neuralagia (sic)."

To relieve the disfunction Dr. Hempstead affixed splints to Mrs. DeMoulin's lower molars to equalize movement in each mandibular joint. The splints were to be worn for a year or so, followed by "permanent dentistry." Dr. Hempstead said the reasonable fee for the work done was

$250. Then over defendant's objection that Mrs. DeMoulin's dental condition had "not been connected up to the accident" Dr. Hempstead said a reasonable fee for permanent rehabilitation would be $1,800 to $2,000. Counsel then asked hypothetically about causation. Dr. Hempstead assumed the whiplash effect of the collision, Mrs. DeMoulin's complaints, her medical treatment and his own findings. Assuming all this Dr. Hempstead said Mrs. DeMoulin's jaw disfunction could be caused by trauma. Counsel then asked his opinion about whether that condition was caused by the collision: "A I would say a patient could suffer a temporomandibular joint subluxation as a result of sudden striking or severe body and head jolting. Q Caused by an automobile collision? A Caused by an automobile collision. Q Of 1966; is that correct? A Yes." Asked what circumstances would cause such a condition Dr. Hempstead answered a traumatic blow, poor dentistry or an excessive yawn.

All this is the evidentiary background for defendant's point that since there was no evidence connecting the collision and the jaw dislocation the trial court erred in refusing his instruction withdrawing the evidence of Dr. Hempstead's bill.

We note that the refused withdrawal instruction did not seek to withdraw all evidence about Mrs. DeMoulin's dislocated jaw. It sought only to withdraw evidence of "Dr. Hempstead's bill for past and future dental services." That pertained only to Mr. DeMoulin's count seeking recovery for dental bills, not to Mrs. DeMoulin's count to recover for her injuries. By plaintiffs' pleading and submission it was Mr. DeMoulin—not his wife—who was seeking to recover dental expenses. Since the refused withdrawal instruction did not affect her claim for damages we limit our consideration of the refusal to his derivative count for expenses.

■ The burden rested on Mr. DeMoulin to show a causal connection between the collision and his wife's dislocated jaw, one of her alleged injuries for which he was seeking to recover medical expenses. Harrison v. Weller, Mo.App., 423 S.W.2d 226 [8]; Moore v. Glasgow, Mo.App., 366 S.W. 2d 475[9]. Like other facts, causation may be shown by direct or circumstantial evidence. In personal injury cases causation is often proven by a medical expert's opinion that the accident did cause the plaintiff's physical infirmity, and this is sufficient. Sita v. Falstaff Brewing Corporation, Mo.App., 425 S.W.2d 487[8]. In contrast, causation may sometimes be shown without medical opinion. This, in "sudden onset" cases where the physical disability develops coincidentally with the negligent act, such as broken bones (Harrison v. Weller, supra), immediate, continuing back pain (Sita v. Falstaff Brewing Corporation, supra), or an obvious wound (Bell v. S. S. Kresge Co., Mo.App., 129 S.W.2d 932[4–6]).

■ Here, counsel asked Dr. Hempstead if Mrs. DeMoulin's dislocated jaw *was caused* by the collision. He answered that it *could* have been. That was merely an opinion that causation was scientifically possible. Such an answer is generally admissible, (Dolan v. D. A. Lubricant Co., Mo.App., 416 S.W.2d 40[3–5]), but standing alone does not prove causation. Bertram v. Wunning, Mo.App., 385 S.W.2d 803[5,6]; and Baker v. Kansas City Terminal Ry. Co., Mo., 250 S.W.2d 999[5]. As said in Smith v. Terminal Transfer Co., Mo.App., 372 S.W.2d 659[11]: "Medical testimony of possibility may be sufficient to establish causation where corroborated by other and nonmedical evidence, as in the case of injuries so naturally and directly connected with the accident that proof of causality does not depend on expert evidence."

■ Plaintiffs rely on that case and others like it to uphold the sufficiency of their causation evidence. They cite sudden onset cases concerning such injuries as a fall followed by immediate and continuous pain. That is not our case. Mrs. DeMou-

lin suffered no trauma involving her jaw. The first symptom of a jaw dislocation appeared four weeks after the collision. Headaches, which she now attributes to the jaw dislocation, began six weeks after the collision. She did not complain about her jaw for a year and a half after the collision. No fact either naturally or directly connects the dislocation with the collision. The facts here are akin to Bertram v. Wunning, Mo.App., 385 S.W.2d 803; Gulley v. Spinnichia, Mo.App., 341 S.W.2d 301, and Moore v. Glasgow, Mo.App., 366 S.W.2d 475, where the physical disabilities were not naturally and directly connected with the accidents and a finding of causation "would rest upon nothing more substantial than sheer speculation, rank surmise, and unbridled conjecture." This brings us to the merits of defendant's withdrawal instruction.

■ The Committee's Comment to MAI 30.01, Withdrawal Instruction, states it should be given where the evidence might raise a false issue. This is true where there is evidence of a physical condition but not of its cause. Bertram v. Wunning, supra [6] Gulley v. Spinnichia, supra [4]; and Immekus v. Quigg, Mo.App., 406 S.W.2d 298[13]. Absent proof of causation the evidence about Dr. Hempstead's bills did raise a false issue. The court erred in refusing the withdrawal instruction, and the defendant is entitled to a new trial on Count III. Since there is no issue of liability and the sole error concerning Count III pertains to damages, only that issue need be retried. Civil Rule 83.13(c), V.A.M.R.; Gulley v. Spinnichia, supra, [6].

In a related point concerning Count III the defendant complains that the court erred in submitting Mr. DeMoulin's damage instruction for loss of his wife's services because "no evidence was adduced or offered to suggest such loss." Since Count III must be retried for the reasons previously stated we need not rule this additional point. It can be avoided on retrial.

■ The defendant raises a separate point about the hypothetical causation question put to Dr. Hempstead, contending it failed to "include all the pertinent and necessary evidence relevant to plaintiff's condition." The point is not reviewable. It is an abstract statement, condemned by Civil Rule 83.05(e), V.A.M.R. Further, the objection made below failed to specify what evidence was improperly omitted. A trial objection to omissions from a hypothetical question is reviewable only insofar as it specifically points out what essentials have been omitted. Hotchner v. Liebowits, Mo.App., 341 S.W.2d 319[8–10]; Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399[2].

The judgment is reversed and the cause is remanded for a new trial, on the issue of damages only, under Count III, with directions to hold in abeyance the verdicts on Counts I and II pending adjudication of Count III, at which time one final judgment should be rendered covering all three counts. Connoley v. Beyer Crushed Rock Co., 355 Mo. 684 (banc), 197 S.W.2d 653 [9]. Costs here and in the trial court are taxed one half against defendant and one half against plaintiff Charles E. DeMoulin.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause is remanded for a new trial, on the issue of damages only, under Count III, with directions to hold in abeyance the verdicts on Counts I and II pending adjudication of Count III, at which time one final judgment should be rendered covering all three counts. Costs here and in the trial court are taxed one half against defendant and one half against plaintiff Charles E. DeMoulin.

WOLFE, P. J., and BRUCE NORMILE, Special Judge, and BRADY, J., concur.